INDIANA CIVIL RIGHTS COMMISSION, JOHNNY E. JACKSON, MRS. JOHNNY E. (MARYLYN) JACKSON v. HELVIE R. HOLMAN

[No. 1-378A66. Filed October 3, 1978. Rehearing denied November 10, 1978. Transfer denied March 26, 1979.]

*Theodore L. Sendak*, Attorney General of Indiana, *Terry G. Duga*, Deputy Attorney General, for appellants.

*Wallace H. Grosbach*, of Brazil, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Defendants-appellants Indiana Civil Rights Commission, Johnny E. Jackson, and Marylyn Jackson appeal from the trial court's judgment wherein the trial court, while reviewing an administrative determination of the Indiana Civil Rights Commission, reversed the Commission's decision and held that there was no substantial and probative evidence in the record which would support that decision of the Commission.

## FACTS

The Jacksons are spouses of a mixed marriage; Marylyn is Caucasian and Johnny is Negro. In January or February, 1972 Marylyn talked to Margaret Holman, the wife of defendant-appellant Helvie Holman, about renting a house on a lake near Terre Haute from the Holmans. Margaret agreed to rent the lakeside apartment to the Jacksons. However, when Marylyn told Margaret that Johnny was a black man, Margaret told Marylyn that she and Helvie did not approve of mixed marriages, but agreed that she and Helvie would talk to Johnny to see what kind of a person he was. After the Jacksons and the Holmans met together Margaret told Marylyn that Johnny seemed very nice and that the Holmans would rent the apartment to the Jacksons for six months and that a determination would be made at the end of that six months, as to whether the lease would be renewed. The Jacksons agreed to rent the apartment.

While the Jacksons lived at the apartment the Holmans prohibited Johnny from using the lake, but they allowed other renters to use the lake. The Holmans also prohibited Johnny from bringing any of his black friends to the apartment.

Thirty days before the 6 month lease would have terminated Margaret told the Jacksons that their lease would not be renewed because the Jacksons had damaged the apartment and permitted the premises to deteriorate and because "they were that kind of people." The Jacksons understood Margaret's reference to "that kind of people" to be a racial slur.

The Jacksons moved out, but when they asked for the return of their $150 security deposit, the Holmans refused to give it to them. The Holmans alleged that the Jacksons had damaged the apartment; the Jacksons maintained that they left the apartment in better condition than they received it.

The Jacksons filed a complaint with the Indiana Civil Rights Commission. The Commission held a hearing, found that Holman had engaged in one or more racially discriminatory practices, ordered Holman to return the Jacksons' $150 security deposit, and ordered Holman to pay the Jacksons $1,000 as compensation for racial insult.

Holman appealed to the trial court, and the trial court held that there was no probative and substantial evidence which would support the findings and decision of the Commission. Therefore, the trial court reversed the decision of the Commission.

## ISSUES

The issues which have been presented to this court for review are as follows:

1. Whether the trial court erred in overruling the Commission's motion to dismiss Holman's petition for judicial review.

2. Whether the decision of the trial court was contrary to law.

3. Whether the Commission exceeded its statutory authority in awarding the Jacksons $1,000 in damages for racial insult.

## DISCUSSION AND DECISION

### Issue One

The Commission contends that the trial court erred in overruling the Commission's motion to dismiss Holman's petition for judicial review for the reason that Holman did not file a transcript of the administrative

proceedings in the trial court within the time allotted by IC 1971, 4-22-1-14 (Burns Code Ed.).

IC 4-22-1-14, *supra*, provides that a verified petition for review must be filed within 15 days after receipt of notice that a determination has been made by the agency; once that petition is filed, IC 4-22-1-14, *supra*, requires that the following procedure be executed:

"Any party or person so filing such verified petition for review with such court shall within fifteen [15] days thereafter secure from such agency a certified copy of the transcript of said proceedings before the agency including the order or administrative adjudication sought to be reviewed and file the same with the clerk of such court in which such action for review is pending. An extension of time in which to file such transcript shall be granted by said court in which such action for review is pending for good cause shown. Inability to obtain such transcript within time shall be good cause. Failure to file such transcript within said period of fifteen [15] days, or to secure an extension of time therefor, shall be cause for the dismissal of such petition for review by the court or on petition of any party of record to the original proceeding. . . ."

In the case at bar Holman filed his verified petition for review within 15 days of receipt of notice of the agency's determination. Holman also timely filed a motion for extension of time in which to file the transcript of the administrative proceedings; the trial court granted Holman's motion for extension of time. The Commission waited 16 months before it provided Holman with the transcript of the administrative proceedings. Two and one-half months thereafter Holman filed the transcript with the trial court.

It is the Commission's argument that Holman should have filed the transcript within 15 days after receiving it from the Commission. We do not agree. There is no statutory support for the Commission's argument. IC 4-22-1-14, *supra*, states that a party seeking judicial review of an administrative decision must obtain and file the transcript of proceedings within 15 days of filing its verified petition for review *or* seek an extension of time in which to file the transcript.

In the case at bar Holman sought and obtained an extension of time in which to file the transcript of proceedings. There is nothing in the

statute which would have imposed a duty upon Holman to file the transcript within a certain period of time after receiving it from the Commission. The court in the case at bar had placed no time limit on the filing of the transcript. Therefore, we hold that Holman complied with the provisions of IC 4-22-1-14, *supra,* and that the trial court did not err in overruling the Commission's motion to dismiss Holman's petition for review.

*Issue Two*

The Commission contends that the judgment of the trial court is contrary to law in that the trial court erroneously ignored certain probative and substantial evidence in reaching its decision that the Commission's determination was not supported by probative and substantial evidence. We agree.

Although the evidence is in conflict, there is probative and substantial evidence which would show that the Holmans did not approve of the Jacksons' racially mixed marriage, that Johnny was denied certain privileges which were afforded to others solely because of his race, and that the Jacksons were forced to vacate the apartment rented from the Holmans solely as a result of the Holmans' racial prejudice, which was evidenced by certain derogatory statements and acts on the part of the Holmans.

In a judicial review of an administrative proceeding a trial court is not free to weigh the evidence, but must look at the evidence most favorable to the party who prevailed in the administrative proceeding in an effort to determine whether or not there exists substantial and probative evidence which would support the findings and decision of the administrative agency. See *Department of Financial Institutions of Indiana, et al. v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248.

In the case at bar the trial court either weighed the evidence or overlooked certain substantial and probative evidence in reaching its decision that no substantial or probative evidence existed which would have supported the findings and decision of the Commission. There is sufficient evidence in the case at bar to support the findings of the Commission that the Holmans were guilty of engaging in certain racially discriminatory practices, and that the Jacksons were not allowed to con-

tinue living in Holman's apartment solely because of improper race discrimination on the part of the Holmans. Therefore, we hold that the trial court erred in finding that there existed no substantial and probative evidence to support the findings of the Commission.

*Issue Three*

Holman contends that, assuming arguendo that a violation of the Civil Rights Act[1] was properly found in the case at bar, the Commission, nevertheless, exceeded its authority in awarding to the Jacksons $1,000 as compensation for racial insult. We agree.

IC 1971, 22-9-1-6(k)(1) states that the Indiana Civil Rights Commission shall have the following powers and duties:

"(k)(1) To state its findings of fact after a hearing and, if the commission finds a person has engaged in an unlawful discriminatory practice, it may cause to be served on such person an order requiring such person to cease and desist from the unlawful discriminatory practice and requiring such person to take further affirmative action as will effectuate the purposes of this chapter, including but not limited to the power to restore complainant's losses incurred as a result of discriminatory treatment, as the commission may deem necessary to assure justice, Provided, however, that this specific provision when applied to orders pertaining to employment shall include only wages, salary or commissions; to require the posting of notice setting forth the public policy of Indiana concerning civil rights and respondent's compliance with said policy and places of public accommodations; to require proof of compliance to be filed by respondent at periodic intervals; to require a person who has been found to be in violation of the Indiana civil rights law, and who is licensed by a state agency authorized to grant a license, to show cause to the licensing agency why his license should not be revoked or suspended."

A careful reading of IC 22-9-1-6(k)(1), *supra,* clearly shows that no provision is made for compensation for racial insult. The statute empowers the Commission to restore a complainant's losses. We hold that the losses referred to in this statute are pecuniary losses which can be proved with some degree of certainty, such as where a person has been denied employment, or living accommodations, or

---

1.   See IC 1971, 22-9-1-1 (Burns Code Ed.) through IC 1971, 22-9-1-13 (Burns Supp. 1978).

business in violation of the Civil Rights Act where that violation results in actual pecuniary loss.

Although IC 22-9-1-6(k)(1), *supra*, does not limit the Commission to simply restoring losses, it does not specifically empower the Commission to award damages as compensation for racial insult, either. An administrative agency has only those powers which are specifically conferred by statute, and all doubtful claims to power by a governmental agency must be resolved against it. See *Monon Railroad Company v. Citizens of Sherwood Forest Addition, Marion County* (1970), 146 Ind.App. 620, 257 N.E.2d 846, *Good v. Western Pulaski County School Corporation* (1965), 139 Ind. App. 567, 210 N.E.2d 100 (Transfer denied with opinion), and 1 I.L.E. *Administrative Law and Procedure* § 21.

We, therefore, hold that the Commission exceeded its statutory powers when it awarded the $1,000 as compensation for racial insult; however, the Commission was acting within its powers when it ordered Holman to return the Jacksons' $150 security deposit in that such was a pecuniary loss on the part of the Jacksons which was directly traceable to Holman's violation of the Civil Rights Act.

Reversed and remanded with instructions that judgment be entered in a manner consistent with the views expressed in this opinion.

Robertson and Young, JJ., participating by designation, concur.

NOTE—Reported at 380 N.E.2d 1281.