**Sue FIELDS, Appellant (Plaintiff),**

v.

**CUMMINS EMPLOYEES FEDERAL CREDIT UNION and Joseph P. Taylor, Appellees (Defendants).**

No. 16A04–8703–CV–00085.

Court of Appeals of Indiana,
Fourth District.

July 6, 1989.

[redacted]

Karon E. Perkins, Columbus, for appellant.

James S. Cunning, Jan P. Abbs, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee Cummins Employees Federal Credit Union.

Richard S. Eynon, Columbus, for appellee Joseph P. Taylor.

MILLER, Judge.

Sue Fields brought common law tort actions against her employer, Cummins Em-

ployees Federal Credit Union, and her supervisor, Joseph P. Taylor. Fields alleged that Taylor subjected her to sexual harassment, batteries, and intentional interference with her advantageous business relationship. Fields also alleged that her employer knew of Taylor's conduct and negligently retained Taylor as a supervisor. The defendants removed Fields's suit to federal district court and that court remanded the cause to state court "upon the grounds that this cause was removed improvidently and without jurisdiction, in that plaintiff asserts claims under state law and not under Title VII." Following discovery and before trial, both defendants moved for and were granted summary judgment. Fields now appeals and argues summary judgment in favor of the defendants was erroneous because (1) Fields's complaint is not barred by the Indiana Worker's Compensation Act's exclusive remedy provision; (2) her cause of action is not preempted by either Title VII or the Indiana Civil Rights Act and (3) Fields has stated a claim for damages arising from common law torts against both Cummins and Taylor.

We affirm the judgment in favor of Cummins, reverse the judgment in favor of Taylor and remand.

### FACTS

Cummins Employees Federal Credit Union (Cummins) is a federally chartered credit union providing financial services to its members. Cummins maintains branches in cities where Cummins Engine Company facilities are located and has three branches in Columbus, Indiana known as Union Street, National Road, and Walesboro. Sue Fields has been an employee of Cummins since 1971 and since 1979 has been assigned to the Union Street Branch. Fields worked in various jobs and received a number of promotions, including her promotion from Loan Officer to Loan Supervisor on November 1, 1983. Joseph P. Taylor was employed by Cummins from September 1972 through August 7, 1984. In March 1981, Taylor was promoted from Manager of the Walesboro Branch to Director of Operations. Taylor moved to the Union Street Branch, and became Fields's

supervisor there. Taylor remained at the Union Street Branch until his discharge.

Fields alleged in her complaint that Taylor subjected her to sexual harassment and batteries including:

"a. Statements that he would give her a better performance review if she would go to bed with him.

b. Repeated requests to go to bed with him, including showing up at her front door one morning.

c. Constant unauthorized touching of the plaintiff on her back, buttocks, and shoulders and attempts to kiss plaintiff.

d. Repeatedly coming into her office and telling plaintiff that she should ask for the afternoon off and that she could have the afternoon off if she would spend it with him.

e. Repeatedly stating that plaintiff could be promoted to loan supervisor if she would sleep with him."

(R. at 12)

In her deposition, Fields described the circumstances surrounding each of the above allegations. Fields also stated that Taylor's July 18, 1984 performance evaluation of her was lower than her previous ratings and Taylor told her, when reviewing his evaluation, that his rating would be higher if she "went to bed" with him.

### I. *Indiana Worker's Compensation Act*

Cummins and Taylor argue that Fields's cause of action is barred by the exclusive remedy provision of the Indiana Worker's Compensation Act because the acts Fields complains of meet the three requirements of, and fall under, the Worker's Compensation Act and Fields has failed to pursue her remedy under the Act. Fields concedes that Taylor's acts arose in the course of her employment with Cummins but challenges the defendants' assertions that her injuries were either by accident or arose out of her employment.

Our supreme court has held that the Worker's Compensation Act excludes all rights and remedies of an employee against her employer for personal injury or death

where the following three statutory jurisdictional prerequisites are met: (1) personal injury or death by accident; (2) personal injury or death arising out of employment; and (3) personal injury or death arising in the course of employment. *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E. 2d 969. An injury is "by accident" when "the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing." *Id.* quoting *Inland Steel Co. v. Almodovar* (1977), 172 Ind.App. 556, 565, 361 N.E.2d 181, 187. An injury "arises out of" the employment relation when it has been caused by employment related risks. An injury "arises in the course of" employment when the time, place, and circumstances of the injury were not so remote from the purposes of the claimant's employment that the act in which he was engaged when the injury occured must be considered one for the claimant's benefit only. *Id.*

Fields asserts her claims are not barred by the exclusivity provision of the Worker's Compensation Act, IND.CODE § 22–3–2–6, because the injuries complained of were not "by accident" and did not arise out of the employment.

Fields cites *Eddy v. The Wickes Corp.*, No. IP 83–857–C, 1985 WL 361 (S.D. Ind., Nov. 20, 1985), (an unpublished memorandum decision involving a similar factual situation) for the proposition that although the initial assault may have been unexpected, the repeated assaults lost their unexpected characteristic and ceased to be accidental. We may consider federal decisions on the same or similar issue; however, this court is not bound by such authority.[1] Here, we are required to reject the conclusions in *Eddy*, because of the decisions in *Evans, supra* and *Hansen v.*

*Von Duprin, Inc.* (1987), Ind., 507 N.E.2d 573.[2]

In *Evans*, the court quoted with approval the following language from *Inland Steel Co. v. Almodovar* (1977), *supra*, 172 Ind. App. at 565, 361 N.E.2d 181, 187:

> As the Harvard Law Review article [Bohlen, "A Problem in Drafting of Workmen's Compensation Acts." 25 *Harvard L.Rev.*, 328 (1912)] quoted *supra* in the excerpt from *Indian Creek [Coal, etc., Co. v. Calvert* (1918), 68 Ind.App. 474, 119 N.E. 519] says "[t]he test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

*Evans, supra* at 974. Fields would have us read this language as requiring an injury to result from a single occurrence in order to be considered accidental. However, this interpretation is not supported by the decision in *Hansen*.

In *Hansen*, the plaintiff "suffered numerous emotional and physical problems, including a gunshot wound inflicted by her former husband...." *Id.* at 574. As a result of the gunshot wound, she developed a fear of guns. Her immediate supervisor repeatedly played jokes on her by simulating the sound of gunfire by dropping books, or firing a cap pistol. He would also jab her in the ribs from behind as if holding a gun. She became increasingly anxious and depressed. Finally her supervisor made a comment which caused her to become hysterical. She left work and was unable to return due to a condition diagnosed as "severe anxiety and depressive syndrome." *Id.* The Industrial Board found the plaintiff's injury arose out of her employment, and was caused by various

---

**1.** Cummins incorrectly asserts this decision has no precedential value based on Ind.Rules of Procedure, Appellate Rule 15(A)(3). A.R. 15(A)(3) deals with unpublished memorandum decisions of this court. In *State v. Black* (1978), 177 Ind.App. 588, 380 N.E.2d 1261, the court held: "an absolute ban in Indiana courts on the reference to unpublished U.S. court decisions is unwarranted." *Id.* at 593–94, 380 N.E.2d at 1265.

**2.** We note the *Eddy* decision relied in part on this court's decision in *Evans v. Yankeetown Dock Corp.* (1985), Ind.App., 481 N.E.2d 121, which was later vacated by our supreme court. *Evans*, 491 N.E.2d 969. At the time of the *Eddy* decision, *Hansen, supra* had not yet been decided.

acts of her foreman, which did not occur on a single occasion, but was not an accident as defined under the Worker's Compensation Act. The Supreme Court reversed the Board's finding that the injury was not an accident, and held the Board's finding the injury arose out of the employment was supported by evidence of probative value. We see no distinction between the repeated harassment in *Hansen* and the harassment in this case. Therefore, we conclude Fields's injuries were "by accident."

 Fields also claims her injuries did not arise out of the employment because there was no causal nexus between Taylor's acts and the employment.[3] An accident arises out of employment if it has its origin in a risk connected with that employment and flowed as a rational consequence from the employment. *Creel v. Handleman Co.* (1971), 148 Ind.App. 378, 266 N.E. 2d 624. An accident arises out of employment when there exists some causal nexus between the injury complained of and the duties or services performed by the injured employee. A causal relation is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or, when the facts show an incidental connection between the conditions under which the employee works and the injury. *Evans, supra; Bowling v. Fountain County Highway Dept.* (1981), Ind.App., 428 N.E. 2d 80; *Estey Piano Corp. v. Steffen* (1975), 164 Ind.App. 239, 328 N.E.2d 240.

 At this point, it is necessary to separate Fields's claims against Taylor from her claims against Cummins. An employee's claim against the employer may be covered by the exclusive remedy provision of the statute, I.C. § 22-3-2-6, even though her claim against a fellow employee is not. *Martin v. Powell*, (1985), Ind.App., 477 N.E.2d 943.

 Cummins asserts that Fields is estopped from arguing that her alleged injuries did not "arise out of" her employment because her cause of action against Cummins requires the existence of an employment relationship. Cummins argues that Fields's claims are, by definition, predicated upon a causal connection between her alleged injuries and her employment relationship and that she is estopped under *Evans* from arguing otherwise. We agree.

In *Evans*, Oscar Evans was shot and killed by an insane co-worker, while drinking coffee on the employer's premises shortly before the start of his work shift. The personal representative of his estate brought a wrongful death action against Yankeetown, alleging "Yankeetown, as employer of Harlan Miller, [the assailant] negligently permitted Miller to come upon the Yankeetown premises and 'discharge a firearm at the Plaintiff's decedent as he sat on the employer's premises awaiting to begin his work.'" *Id.* at 970. Our supreme court affirmed the trial court's grant of summary judgment in favor of the employer. The court held, *inter alia:*

> Significantly, however, Evans's wrongful death action against Yankeetown requires the existence of this employment relationship. The complaint alleges negligence of Yankeetown, as employer of Oscar Evans and Harlan Miller. The gravamen of her tort action is the alleged breach of duty of Yankeetown, as employer. The viability of Evans's wrongful death action is predicated upon a causal connection between the death and the employment, i.e., that the death arose out of employment. Evans cannot now contend otherwise.

Fields bases her claim against Cummins on the doctrine of *respondeat superior*, or alternatively on the tort of negligent retention. Under the doctrine of *respondeat superior*, an employer is responsible for the actions of its employee only if the employee is acting within the scope of his employment. *Gomez v. Adams* (1984), Ind. App., 462 N.E.2d 212. An employee is not acting within the scope of employment

---

**3.** Both Fields and Cummins cite numerous decisions in other jurisdictions in support of their arguments. We decline to discuss these decisions, because we believe *Evans, supra* is controlling in this case.

"where the act is done on the employee's own initiative and is not done in the service of the employer." *City of Crawfordsville v. Michael* (1985), Ind.App., 479 N.E.2d 102. Generally, the determination of whether an employee was acting within the scope of employment is a question of fact. *Gomez, supra.*

However, in this case, the determination of whether Taylor was acting within the scope of his employment is irrelevant so far as the summary judgment in favor of Cummins is concerned. If Taylor was acting within the scope of his employment, the injury would by definition arise out of the employment; if he was not, the doctrine of *respondeat superior* would not apply and Cummins would not be liable for his acts.

However, under certain circumstances an employer may be liable for the actions of an employee who is not acting within the scope of his employment. The *Restatement (Second) of Torts* § 317 is instructive on this issue.

§ 317. Duty of Master to Control Conduct of Servant.

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

\* \* \* \* \* \*

Comment:

c. *Retention in employment of servants known to misconduct themselves.*

There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.

This principle—designated negligent retention—has been recognized in Indiana. *Pittsburgh, Ft. Wayne and Chicago Railway v. Ruby* (1871), 38 Ind. 294; *Shipley v. City of South Bend* (1978), 175 Ind.App. 464, 372 N.E.2d 490. *See, Tindall v. Enderle* (1974), 162 Ind.App. 524, 320 N.E.2d 764.

Nevertheless, Fields's claim for negligent retention was premised on Cummins's negligence in the employment relationship. Under the *Evans* decision such claims are barred by the exclusivity provision of the Worker's Compensation Act. *See also Shelby v. Truck & Bus Group Division of General Motors Corp.* (1989), Ind.App., 533 N.E.2d 1296; *National Can Corp. v. Jovanovich* (1987), Ind.App., 503 N.E.2d 1224, *trans. denied.* Therefore, the trial court properly granted summary judgment in favor of Cummins.

Finally, Fields argues her claim for negligent retention should not be barred by the exclusivity provision because she did not receive the *quid pro quo* which comprises the rationale for workmen's compensation acts. As explained in Prosser, *Handbook of the Law of Torts*, § 80, pp. 531–32 (4th ed., 1971):

When an injury to a servant is found to be covered by a workmen's compensation act, it is uniformly held that the statutory compensation is the sole remedy, and that any recovery at common law is barred. It is recognized that this remedy is in the nature of a compromise, by which the workman is to accept a limited compensation, usually less than the estimate which a jury might place upon his damages, in return for an extended liability of the employer, and an assurance that he will be paid. Accordingly, even though his damages are partly of a nature not compensated under the act, he has no cause of action on the negligence of his employer.

■ Fields claims that because Cummins did not pay any medical bills or file a claim for her, she has received nothing of value under the Worker's Compensation Act. In *Evans*, no workmen's compensation claim was filed, but the court held workmen's compensation was the exclusive remedy. The question is not whether the employee receives compensation, rather it is whether the statutory jurisdictional prerequisites are met. We have concluded the injury was (1) by accident, (2) arose out of the employment and (3) arose in the course of employment.[4] Therefore, workmen's compensation was Fields's exclusive remedy against Cummins.

■ Taylor argues because he was in the same employ as Fields, he, too, is immune from suit under the exclusive remedy provision of the statute.[5] Even if Fields's claims meet the three jurisdictional prerequisites, Taylor is not automatically immune from suit. In *Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943, the plaintiff was injured when the defendant, a fellow employee, pulled a chair out from under her in an act of horseplay. The court noted IND.

CODE 22-3-2-13[6] permits an employee to pursue a common law remedy against a tortfeasor who is "not in the same employ." *Id.* However, in order to invoke the immunity provision, the defendant must be "acting in the course of his employment at the time the plaintiff suffers his compensable injuries." *Martin, supra* at 945. The court concluded:

> In the case before us, it is undisputed that Rebecca Martin was acting in the course of her employment when she was injured. It is equally clear that Steven Powell was not acting in the course of his employment when he engaged in the horseplay which resulted in Rebecca's injuries. *See Block v. Fruehauf Trailer Division Fruehauf Corp.* (1969), 146 Ind.App. 70, 74 252 N.E.2d 612, 615. Consequently, we must conclude that Powell is not entitled to invoke the immunity granted to those "in the same employ." *Id.*

In *Martin*, the court recognized that an employee's claim may meet the jurisdictional requirements of the Worker's Compensation Act *vis a vis* the injured employee and employer, but not meet the requirements of the act *vis a vis* the injured employee and the tortfeasor. Although the *Martin* court used the term "course of employment" it appears to have used the term in the same general sense as "scope of employment" is used in analyzing claims based on the doctrine of *respondeat superior,* rather than the more specific sense in which the term is used in the context of workmen's compensation acts. In the Worker's Compensation Act, "in the course of employment" refers to the time, place and circumstances under which the accident took place, while "arising out of the employment" refers to the cause of the injury. *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168. There-

---

**4.** Fields does not contend the injury did not arise in the course of employment.

**5.** IND.CODE 22-3-2-6

**6.** "Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article."

fore, in the workmen's compensation context, when determining if a fellow employee is immune from suit under I.C. § 22–3–2–13, it may be better to consider whether the injury arose out of the tortfeasor's employment.

■ In this case, the question is whether Taylor's acts arose out of his employment. The analysis employed in "horseplay" cases is instructive.[7] When an injury results from horseplay, a participant in the horseplay is not entitled to workmen's compensation, because his acts were not for the benefit of the employer, and therefore did not arise out of the employment. *Lincoln v. Whirlpool Corp.* (1972), 151 Ind.App. 190, 279 N.E.2d 596. However, the innocent victim of horseplay is entitled to workmen's compensation. *Id.; Pepka Spring Co. v. Jones* (1978), 175 Ind.App. 285, 371 N.E.2d 389, *trans. denied,* 269 Ind. 102, 378 N.E.2d 857.

■ We find it inconceivable that acts of sexual harassment or assault could be for the benefit of the employer. Therefore, Taylor's acts did not arise out of his employment and he is not immune from suit under I.C. § 22–3–2–6 and 22–3–2–13.

## II. *Title VII Preemption*

Both Cummins and Taylor[8] argue that Fields's state law cause of action is preempted by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or, in the alternative, has been extinguished because Fields failed to comply with Title VII's administrative requirements. Although this question has implicitly been decided adversely to Taylor by the federal district court which remanded the cause to state court for trial, we will address Taylor's arguments.

■ Fields responds that Taylor's argument is based on the mistaken notion that Fields has no common law right to be free from the acts committed by him and that workers were "fair game" for sexual

harassment until the passage of Title VII. Fields points out that to argue the federal remedy is the sole remedy for sexual harassment would mean Title VII *decreased* protection for female employees in the workplace. We agree and find Title VII does not preempt Fields's common law claims.

■ The United States Supreme Court addressed the question of Title VII preemption of state law remedies and Congressional intent in *Alexander v. Gardner–Denver* (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed. 2d 147:

> "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to *supplement,* rather than supplant, existing laws and institutions relating to employment discrimination." (emphasis added).

*Gardner–Denver, supra,* 415 U.S. at 48–49, 94 S.Ct. at 1019–20. The supreme court restated its position on this question in *Johnson v. Railway Express Agency* (1975), 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed. 2d 295:

> "Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief."

*Johnson, supra,* 421 U.S. at 459, 95 S.Ct. at 1719.

Clearly, Title VII rights are independent of the rights created by other federal and state statutes, and where remedies coincide or overlap, the claimant is permitted to utilize whichever relief is desired. *See, Laffey v. Northwest Airlines, Inc.* (D.C. Cir.1976), 567 F.2d 429, 445, *cert. denied,*

---

7. Sexual harassment and horseplay are similar to the extent that the victim and the aggressor are brought together because of the employment relationship.

8. Taylor adopted Cummins's brief on this issue. Because we have held Fields's claim against Cummins is barred by the exclusive remedy provision of the Worker's Compensation Act, we will refer to the defendant as Taylor.

434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). A plaintiff who has both federal and state causes of action may choose to ignore the federal claim and to pursue only the state claims in state court. *People v. Kerr McGee Chemical Corp.* (7th Cir., 1982), 677 F.2d 571, *cert. denied with opinion,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982).

We note the remedies available under Title VII are limited to reinstatement, hiring, back pay, front pay, and injunctive relief to set up specific employment policies and procedures. 42 U.S.C. § 2000e. The remedies available for common law tort claims are broader and more comprehensive, and provide for both compensatory and punitive damages not permitted under Title VII.

Because Title VII rights are independent of state law tort rights, Fields is not required to follow the specific procedures required under Title VII to obtain relief. Fields is not seeking Title VII relief, so she is not required to comply with federal statutory procedures to secure state common law relief.

III. *Indiana Civil Rights Act Preemption*

Taylor next argues that Fields's state common law claims are preempted by the Indiana Civil Rights Act, IND.CODE 22–9–1–1 to 22–9–2–8, or have been extinguished by failure to comply with the Indiana Civil Rights Act statutory filing procedures. Fields responds that her common law claims for assault, battery, infliction of emotional distress, and intentional interference with a business relationship are independent from the Indiana Civil Rights Act. Fields maintains that although the Indiana Civil Rights Act provides an additional remedy, it does not abrogate the power of the common law to fashion remedies for violation of common law rights. The Indiana Civil Rights Act is similar to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e et seq. Where the statutory language is similar, federal decisions are persuasive authority and will be given careful consideration. *Indiana Civil Rights Com'n v. Sutherland Lumber* (1979), Ind.App., 394 N.E.2d 949. Fields relies upon *Moffett v. Gene B. Glick Co., Inc.* (N.D.Ind.1984), 604 F.Supp. 229, and *Moffett v. Gene B. Glick Co. Inc.,* (N.D. Ind.1985), 621 F.Supp. 244.

In *Moffett,* the plaintiff filed a complaint under Title VII, 42 U.S.C. § 1981, and four Indiana common law tort theories, invasion of privacy, infliction of emotional distress, breach of contract and fraud, and interference with a contractual or advantageous business relationship. The court held the plaintiff could maintain the action on all counts except the fraud and interference with a contractual relationship. *Moffett* was overruled in part by *Reeder–Baker v. Lincoln National Corp.* (N.D.Ind.1986), 644 F.Supp. 983. *Reeder–Baker* overruled the holding in *Moffett* recognizing a state common law claim for breach of contract based on a retaliatory discharge claim, because the Indiana Supreme Court had limited the application of retaliatory discharge claims. *See Morgan Drive Away, Inc. v. Brant* (1986), Ind., 489 N.E.2d 933. However, the court overruled only that portion of *Moffett* which concerned the retaliatory discharge claim. The holding that the plaintiff could present common law tort claims in conjunction with Title VII claims was not overruled.

Taylor insists Fields's complaint is for sexual harassment for which there is no common law remedy, and which, therefore, must be covered either by Title VII or the Indiana Civil Rights Act or, alternatively, if a common law right exists it is preempted by statute. Taylor relies on *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73 for the proposition general common law principles apply only when there are no special statutory provisions. In *Whisman,* the plaintiff brought a dramshop action against two defendants under IND.CODE § 7.1–5–10–14 and § 7.1–5–10–15 for selling liquor to a person they knew to be an habitual drunkard, or who was intoxicated at the time of sale. He also alleged a common law action for selling or furnishing liquor to an intoxicated person. *See Elder v. Fisner* (1966), 247 Ind. 598, 217 N.E.2d 847. The court held the facts establishing a common law

duty were the same as those which established a violation of the specific statutory provisions and therefore the common law did not apply.

However, *Whisman* is distinguishable from the case at bar. Taylor contends Fields's complaint should be read narrowly as asserting a claim only for discriminatory actions arising from the sexual harassment. If this were true, Taylor's argument would be well taken. However, Fields alleges additional common law torts (assault, battery, infliction of emotional distress, and interference with an advantageous business relationship). These torts require proof of facts in addition to those necessary to show discrimination in employment. In addition, the remedies available under the Indiana Civil Rights Act are limited to the same kinds of remedies as those under Title VII. Compensatory and punitive damages are not available under the Indiana Civil Rights Act. In *Whisman* the remedies under the specific statutory provisions and the common law were the same. *Whisman* is not applicable to this case.

Taylor also argues courts in other jurisdictions have held claims like Fields's are preempted by Title VII or the state's civil rights law. The cases cited[9] involved claims based solely on charges of sex, race or age discrimination leading to retaliatory discharge. Two of the cases do not support Taylor's argument. In *Shaffer v. National Can Corp.* (E.D.Penn.1983), 565 F.Supp. 909, the court held that although the plaintiff's claim for wrongful discharge was covered by the Pennsylvania Human Relations Act, her common law claim for intentional infliction of emotional distress was not preempted. Similarly, in *Pierce v. New Process Co.* (W.D.Penn.1984), 580 F.Supp. 1543, *aff'd* (3rd Cir.1984), 749 F.2d 27, the court held the plaintiff stated a cause of action for infliction of emotional distress, even though the plaintiff's common law claim for wrongful discharge was

preempted by the Age Discrimination in Employment Act.

█ Fields's common law claims for assault, battery, infliction of emotional distress, and interference with an advantageous business relationship are not preempted by the Indiana Civil Rights Act. Because Fields was not seeking relief under the Indiana Civil Rights Act, she was not required to exhaust her administrative remedies under the statute.

## IV. *Common Law Torts*

█ Fields contends she has stated a claim for assault and battery. Battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent...." *W. Keeton, Prosser and Keeton on The Law of Tort,* § 9, (5th ed. 1984). An assault creates an apprehension of a harmful or offensive contact. *Id.* § 10. An attempt to kiss or fondle a woman without her consent has been held to be an assault and battery. *Timmons v. Kenrick* (1913), 53 Ind.App. 490, 102 N.E. 52. Fields alleges Taylor touched her face, shoulders and buttocks and attempted to kiss her all without her consent. Fields has stated a claim for assault and battery against Taylor.

█ Fields also argues she has stated a claim for infliction of emotional distress. Although the general rule in Indiana requires a physical injury for a claim of emotional distress, *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247, Indiana has long recognized a claim for emotional distress when accompanied by an assault or battery. *Kline v. Kline* (1902), 158 Ind. 602, 64 N.E. 9; *Golibart v. Sullivan* (1903), 30 Ind.App. 428, 66 N.E. 188.

█ Fields also contends she has stated a claim for interference with an ad-

---

**9.** *Wolk v. Saks Fifth Avenue, Inc.* (3rd Cir.1984), 728 F.2d 221; *Guevara v. K–Mart Corp.* (S.D.W. Va.1986), 629 F.Supp. 1189; *Guiterrez v. City of Chicago* (N.D.Ill.1985), 605 F.Supp. 973; *Hudson v. Moore Business Forms, Inc.* (N.D.Ca.1985), 609 F.Supp. 467; *Pierce v. New Process Co.* (W.D. Penn.1984), 580 F.Supp. 1543, *aff'd* (3rd Cir. 1984), 749 F.2d 27; *Mein v. Masonite* (1985), 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312; *Grzyb v. Evans* (1985), Ky., 700 S.W.2d 399; *Strauss v. A.L. Randall Co.* (1983), 144 Cal.App.3d 514, 194 Cal.Rptr. 520.

vantageous business relationship. The elements of a cause of action for tortious interference with a business relationship are the same as the elements for interference with a contract except that there is no requirement a valid contract exists. *Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977. The elements for an action for interference with a contract are "(1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Id.* at 983.

Fields alleges Taylor's actions resulted in an oppressive and hostile working environment which interfered with her business relationship with Cummins. Although Fields is still employed by Cummins, she voluntarily accepted a demotion. There are genuine issues of material fact whether Taylor's actions contributed to her decision to accept the demotion.

Therefore, we affirm the summary judgment in favor of Cummins, reverse the summary judgment in favor of Taylor and remand for further proceedings in accordance with this opinion.

CONOVER, P.J., and BAKER, J., concur.