**INDIANA CIVIL RIGHTS COMMISSION, Alpha Blackburn as Chairman of the Indiana Civil Rights Commission and Myra L. Ware, Appellants–Respondents,**

v.

**UNION TOWNSHIP TRUSTEE, UNION TOWNSHIP, MONTGOMERY COUNTY, Appellee–Petitioner.**

No. 54A01–9112–CV–366.

Court of Appeals of Indiana, First District.

April 28, 1992.

Transfer Denied July 6, 1992.

Jacquelyn Thompson, Indiana Civil Rights Commission, Indianapolis, for appellants-respondents.

Harry A. Siamas, Crawfordsville, for appellee-petitioner.

BAKER, Judge.

*The Victim*

Respondent-appellant Myra L. Ware has a lengthy and heart-rending history of misfortune. Her grandfather fondled her as a child. Her alcoholic father·beat her mother. Her mother and brother physically and

mentally abused her. She has been raped and mugged, and both of her husbands beat her. She suffers from a chronic arthritic condition.

In December of 1984 Ware sought refuge at her mother's home in Terre Haute. After an argument, her mother ordered her out of the house on Christmas day. That is how she arrived in Crawfordsville, where she met the man who ultimately caused this appeal.

### The Trustee

On January 4, 1985, Ware submitted an application for assistance from the Trustee, James Burkhardt, serving Union Township of Montgomery County. In return for eleven hours of weekly service, Burkhardt provided Ware with shelter in the local Township House.

After Ware's first day on the job, Burkhardt asked her to be his private secretary, despite the fact that Burkhardt knew he had no need for a private secretary and no money to pay for one. Ware accepted. During the next two days Burkhardt made inappropriate sexual advances towards Ware. He said he could fall in love with her and that he wanted to kiss her. Ware replied that she was interested only in an employer-employee relationship. On the evening of the second day, Ware found a note Burkhardt had slipped under her apartment door, in which he asked her to accompany him to Indianapolis the next day to attend the legislative session. She trusted him and thought it would be a good learning experience.

During the trip Burkhardt again made inappropriate sexual advances. He told Ware he liked her eyes, lips, and skin color, and, after grasping her hand, told her "I could really fall in love with you." Ware reminded Burkhardt of her earlier comment regarding his designs. At the end of the day, Burkhardt continued his advances, this time telling her that all day long he had had the urge to kiss her. The ride home was understandably tense, as Burkhardt carried a .357 Magnum in his truck and Ware knew it. Although the evening passed without incident, Ware packed her bags and left the Township House the next morning.

### The Complaint: Procedural History

In February of 1985 Ware filed a discrimination complaint with the Indiana Civil Rights Commission (the ICRC), alleging sexual harassment in employment and housing. She claimed Burkhardt's actions forced her to quit her job and leave the Township House. The ICRC agreed and awarded Ware $25,000 for emotional distress and $5,000 in punitive damages, and also issued a cease and desist order against the Trustee. A subsequent Trustee sought judicial review.[1] The trial court, in a thoughtful and sound decision, reversed the ICRC's award, determining that 1) the ICRC exceeded its statutory authority in making the award, 2) the Trustee was immune from the punitive damages claims, and 3) the award was not supported by substantial evidence. It also determined the ICRC violated the Trustee's due process rights by giving Ware access to ICRC files while denying the same information to the Trustee, and consequently ordered the ICRC to make its file on the case available not just to Ware, but to the Trustee as well. The trial court then vacated the ICRC's order and remanded for further proceedings consistent with the trial court's judgment.

Ware and fellow respondent-appellees ICRC, through Alpha Blackburn as Chairman, (collectively, ICRC) now appeal the trial court's decision in favor of the Union Township Trustee of Montgomery County (Trustee). ICRC challenges all three of the trial court's conclusions regarding the ICRC's award. Because Indiana law is settled that the ICRC exceeded its statutory authority, however, we address only that issue.

---

1. A replacement Trustee was appointed after Burkhardt took his own life in December of 1986.

## DISCUSSION AND DECISION

■ The ICRC is an administrative agency created by statute. IND.CODE 22–9–1–6 imparts the ICRC's powers and duties, and provides, in relevant part:

(k)(1) The commission shall state its findings of fact after a hearing and, if the commission finds a person has engaged in an unlawful discriminatory practice, shall cause to be served on this person an order requiring the person to cease and desist from the unlawful discriminatory practice and requiring the person to take further affirmative action as will effectuate the purposes of this chapter, including but not limited to the power:

(A) to restore complainant's losses incurred as a result of discriminatory treatment, as the commission may deem necessary to assure justice; however, this specific provision when applied to orders pertaining to employment shall include only wages salary, or commissions[.] ...

In *Indiana Civil Rights Comm'n v. Holman* (1978), 177 Ind.App. 648, 653–54, 380 N.E.2d 1281, 1285, this court held the statutory use of the word "losses" refers to "pecuniary losses which can be proved with some degree of certainty, such as where a person has been denied employment, or living accommodations, or business in violation of the Civil Rights Act where that violation results in actual pecuniary loss." Observing that an administrative agency has only those powers specifically granted by statute, and that all doubtful claims to power by a governmental agency must be resolved against it, the *Holman* court held the ICRC exceeded its statutory mandate in awarding $1,000 to a tenant whose landlord hurled a racial epithet at him. *Id.* at 654, 380 N.E.2d at 1285.

The ICRC is well aware of the *Holman* ruling. It simply chose to ignore it. In a memorandum accompanying its Order, the ICRC wrote "[t]he *Holman* decision is not simply cast aside as an inconvenience but because ICRC has determined that the

Court of Appeals' holding in *Holman* was erroneous." *Record* at 802. True, the ICRC then explained why, in its opinion, *Holman* was not controlling. The fact remains, however, that case law conceived since the *Holman* opinion has consistently upheld that decision.

In *Indiana Civil Rights Comm'n v. Midwest Steel* (1983), Ind.App., 450 N.E.2d 130, this court wrote:

The purpose of the limitation that 'orders pertaining to employment shall include only wages, salary or commissions,' is to prohibit an award of *monetary damages* for feelings of embarrassment or insult which may arise out of discriminatory acts such as sexual harassment.

*Id.* at 140 (emphasis in original). In *Fields v. Cummins Employees' Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631, we flatly determined that "[c]ompensatory and punitive damages are not available under the Indiana Civil Rights Act." *Id.* at 640. And most recently, in *Crutcher v. Dabis* (1991), Ind.App., 582 N.E.2d 449, we held the ICRC exceeded its statutory authority when it awarded $28,000 for emotional distress damages and $2,000 for punitive damages on a housing discrimination complaint.

■ In Myra Ware's case, the ICRC awarded $25,000 not for pecuniary losses, as allowed by statute, but for emotional distress. It also awarded $5,000 in punitive damages. *Holman, Midwest Steel, Fields,* and *Crutcher* make clear that the ICRC exceeded its delegated authority by granting the award in Ware's favor. Although an agency's interpretation of its own statute should be accorded great weight, the courts are not bound by the interpretation and should reverse if the agency incorrectly interpreted the statute. *Crutcher, supra,* at 451. Questions of law are within the province of the judiciary. *State ex. rel Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829. Here, the ICRC did not rely on an interpretation so much as it simply chose to ignore settled case law.[2]

---

2. We remind the ICRC that neither it nor the judiciary is the proper vehicle to modify established statutory dictates. We suggest the ICRC lobby our General Assembly if the ICRC desires a change in, addition to, or repudiation of settled law.

■ The trial court correctly determined the ICRC abused its discretion and acted capriciously and not in accordance with law. IND.CODE 4–21.5–5–14. The trial court then ordered the cause remanded to the ICRC for proceedings consistent with the trial court's judgment. This was unnecessary. The law does not allow the ICRC to grant Ware emotional distress and punitive damages. A remand, then, could only address the issue of pecuniary damages. The ICRC's ruling, however, excluded any pecuniary damage recovery. First, it awarded only emotional distress and punitive damages, thus implicitly rejecting a pecuniary damage award. Second, it explicitly found "Ware has not proven by a preponderance of the evidence that she lost any wages, salary, or commissions that she would otherwise have received from the Trustee." *Record* at 800. And if Ware had not, in fact, initially sought pecuniary damages, she would be precluded from raising the issue on remand. Therefore, a remand is pointless.[3]

Although Myra Ware's situation is most lamentable, her misfortunes provide the ICRC no justification for acting in the face of established law. We affirm the judgment of the trial court in all respects except that regarding remand; remand is unnecessary under the facts of this case. We order judgment entered in favor of the Trustee.

RATLIFF, C.J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. As I previously stated in dissent in *Crutcher v. Dabis* (1991), Ind.App., 582 N.E.2d 449, *trans. pending*, IC 22–9–1–6, properly construed, permits the emotional distress award granted by the Indiana Civil Rights Commission.

The section of the Federal Civil Rights Act comparable to IC 22–9–1–6 provides: "If the administrative law judge finds that a respondent has engaged or is about to engage in a discriminatory housing practice, such administrative law judge shall promptly issue an order for such relief as may be appropriate, which may include *actual damages suffered* by the aggrieved person and injunctive of other equitable relief." (emphasis added). 42 U.S.C. § 3612(G)(3). This section has been construed by the federal courts to include emotional distress damages. See *Steele v. Title Realty Co.*, 478 F.2d 380 (10th Cir.1973) (damages in a discriminatory housing action are not limited to out-of-pocket losses but may include an award for emotional distress and humiliation).

Under IC 22–9–1–6, the ICRC has the power to "restore the complainant's losses [as] necessary to assure justice." It cannot logically be maintained that the emotional distress suffered by a victim of sexual harassment is not a compensable "loss" under the statute. Assuring justice necessarily requires the making whole of an injured person, and a person found to have suffered emotional distress certainly is not whole. I would therefore reverse the trial court's determination that the ICRC acted capriciously and not in accordance with law and its disallowance of Ware's emotional distress damages.

---

**3.** Our holding makes it unnecessary to address the issue of whether the ICRC violated the Trustee's due process rights by refusing to allow the Trustee equal access to the ICRC's file. We observe only that all administrative agencies should avoid even the appearance of impropriety and favoritism, *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65, and that, in our view, absent compelling circumstances, the ICRC should make available to the second party exactly what it makes available to the first party.