**INDIANA CIVIL RIGHTS COMMISSION, Alpha Blackburn as Chairman of the Indiana Civil Rights Commission and Sharon Johnson, Appellants–Respondents,**

v.

**WASHBURN REALTORS, INC., Appellee–Petitioner Below.**

No. 45A03–9206–CV–00174.

Court of Appeals of Indiana, Third District.

March 16, 1993.

Jacquelyn Thompson, Indiana Civil Rights Com'n, Indianapolis, for appellants.

Robert F. Peters, Karen L. Hughes, Lucas, Holcomb & Medrea, Merrillville, for appellee.

STATON, Judge.

Sharon Johnson, the claimant, and the Indiana Civil Rights Commission (the "Commission") seek review of the order of the trial court which set aside the cease and desist order and the $11,500.00 in damages awarded by the Commission against Washburn Realtors, Inc. ("Washburn Real-

tors"). The trial court found there was not substantial evidence in the record that Verne Washburn of Washburn Realtors knew Sharon's race. The Commission raises one issue for our review; Washburn, cross-appeals, raising four additional issues. We consolidate these issues and restate them as:

   I.  Whether the claimant established a *prima facie* case of discrimination.

   II.  Whether there was sufficient evidence to support the determination of the Commission that Washburn Realtors unlawfully discriminated against the claimant.

   III.  Whether the Commission exceeded its statutorily delegated authority in granting damages for emotional distress and punitive damages.

We affirm in part and reverse in part.

On March 6, 1985, Sharon, a black female, met with Cindy Washburn of Washburn Realtors to view a townhouse in Barclay Village. While Cindy lacked any authority to rent a townhouse, Cindy's duties for Washburn Realtors included showing townhouses to prospective renters and taking applications. After viewing the townhouse, Sharon filled out an application to rent the townhouse. Sharon and Cindy also viewed a second townhouse by looking through a window.

After receiving Sharon's application, Cindy gave the application to Verne Washburn. Only Verne had the authority to rent a townhouse. Verne denied Sharon's application after receiving an unfavorable credit report. Cindy informed Sharon of the rejection, and Sharon left a message asking Verne to call her. Verne later contacted Sharon, and the two modified the terms of the rejection. The modification required Sharon to remove the negative aspects of her credit report prior to Verne approving her application.

The following week, Cindy told Sharon that Verne would rent her a different townhouse. At this time, no mention was made of the need to have the credit report modified. However, Sharon determined, based on the location and condition of the second townhouse, the second townhouse was inferior to the first townhouse. On March 29, 1985, Sharon filed her complaint.

On May 16, 1990, the Commission held a hearing. Ultimately, the Commission found that Washburn Realtors had obtained Sharon's credit report as a pretext to discriminate against her based on her race and sex. The Commission issued a cease and desist order against the discriminatory practices of Washburn Realtors and awarded Sharon $4,000.00 in damages for emotional distress and $7,500.00 in punitive damages. Washburn Realtors sought judicial review, and the trial court set aside the order of the Commission for a lack of substantial evidence. The Commission appeals.

## I.

### *Prima Facie Case*

■ The determination of whether Sharon established a *prima facie* case is a question of law and is properly addressed by this court. *Ind. Civil Rights Com'n v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, 419, *reh. denied, trans. denied.* The claimant in a racial discrimination proceeding must make a *prima facie* case of discrimination by showing: (a) the claimant is a member of a racial minority; (b) the claimant applied for and was qualified to rent certain property; (c) the claimant was rejected; and (d) the rental opportunity remained thereafter. *Ind. Civil Rights Com'n v. Wellington Village* (1992), Ind.App., 594 N.E.2d 518, 529, *trans. denied.*

■ If the claimant successfully establishes a *prima facie* case, a presumption of discrimination is raised, and the burden shifts to the opposing party to articulate a legitimate, non-discriminatory reason for its conduct. *Id.* If the opposing party meets this burden, the claimant must prove by a preponderance of the evidence, "by demonstrating either directly that the [opposing party] actually harbored discriminatory motives or indirectly by showing that the reasons advanced by the [opposing party] were, in the context of the surrounding circumstances, unworthy of credence."

*Ind. Dept. of Correction v. Ind. Civil Rights Com'n* (1985), Ind.App., 486 N.E.2d 612, 618, *reh. denied, trans. denied.* The parties raise conflicting contentions as to whether Sharon established a *prima facie* case.

First, we address the contention of the Commission that the evidence was sufficient that Verne knew Sharon's race. We agree with the Commission. The trial court found, because Verne only talked to Sharon on the phone, the

> record [was] devoid of substantial evidence that [Verne] knew that [Sharon] was black and, therefore, any finding or inference that [Sharon] was treated differently because she was black is unsupported by the evidence.... The essential element of any discriminatory intent on the part of [Washburn Realtors] is not supported by substantial evidence....

Record, p. 862. However, the record reflects Cindy was Verne's agent, her responsibilities included showing townhouses to prospective renters, and Cindy showed Sharon, a black female, a townhouse. The knowledge of an agent acting within the scope of her authority and with reference to matters over which her authority extends is imputed to her principal. *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1151, *reh. denied,* 439 N.E.2d 666, *trans. denied.* The decision of the Commission is founded on knowledge imputed to Verne from Cindy, and we conclude the record contains substantial evidence that Verne knew Sharon's race and sex.

Washburn Realtors contends that Sharon failed to establish her *prima facie* case of discrimination. However, the record reflects that Verne knew Sharon was an African–American; while Sharon applied for a townhouse and was rejected, she was later qualified for the second townhouse; and first townhouse was rented to a couple who made their application on March 30, 1985. Therefore, we conclude that Sharon established a *prima facie* case.

Washburn Realtors contends that Sharon failed to establish that she was qualified to rent the townhouse. However, the record reflects that Verne offered Sharon the second townhouse for the same monthly rent without mentioning the need to correct her credit report. We conclude this offer by Washburn Realtors establishes Sharon's qualifications to rent a townhouse at Barclay Village. This contention is without merit.

## II.

### *Substantial Evidence*

Substantial evidence requires something more than a scintilla and something less than a preponderance of the evidence. *State ex rel. Dept. of Natural Resources v. Lehman* (1978), 177 Ind.App. 112, 378 N.E.2d 31. The standard is met when a reasonable person would conclude that evidence as presented, with its logical and reasonable inferences, was of such a substantial character and probative value as to support the administrative determination. *Id.* Washburn Realtors raises two issues as to whether the Commission's determination was supported by substantial evidence: (1) whether the Commission improperly rejected Verne's legitimate non-discriminatory reason for its conduct; and (2) the relevance of the information contained in the credit report.

First, Washburn Realtors contends it adequately rebutted any inference of discrimination by articulating a legitimate non-discriminatory reason for its conduct. Washburn Realtors contends its legitimate non-discriminatory reason was that Verne obtained credit reports on all potential tenants. The Commission found that Verne's testimony was not credible, in part, because in response to the Commission's request for rental applications and credit reports, Washburn Realtors produced six rental applications. Only Sharon's application had an accompanying credit report. This court on review does not judge the credibility of the witnesses. *Wellington Village, supra,* at 529.

Second, Washburn Realtors contends Sharon's credit report "disclosed a legitimate problem", and therefore, the evidence establishes that Verne did not use the cred-

it report as a pretext to discriminate. Washburn Realtors confuses the issue here. The finding of the Commission is based on the finding that Washburn Realtors only obtained a credit report on Sharon, and that this act was the pretext to discriminate and not on the information contained in the report. We conclude this contention is without merit.

Sharon established a *prima facie* case which gave rise to the presumption of discrimination in the actions of Washburn Realtors. Washburn Realtors failed to credibly articulate a legitimate reason for only obtaining a credit report on Sharon. We conclude the Commission had substantial evidence that Washburn Realtors used the credit report as a pretext to discriminate against Sharon based upon her race and sex.

### III.

#### Damages

■ The Commission is an administrative agency and only has those powers specifically granted to it by statute. All doubtful claims must be resolved against the Commission. *Ind. Civil Rights Com'n v. Holman* (1978), 177 Ind.App. 648, 653–54, 380 N.E.2d 1281, 1285, *reh. denied, trans. denied.* The Commission's powers and duties are prescribed by IND.CODE 22–9–1–6 (Supp.1992). Although an agency's interpretation of its own statute should be accorded great weight, the courts are not bound by the agency's interpretation and should reverse if the agency incorrectly interprets the statute. *Ind. Civil Rights Com'n v. Union Twp. Trustee* (1992), Ind.App., 590 N.E.2d 1119, 1121, *trans. denied.*

■ In the present case, the Commission awarded Sharon $4,000.00 in emotional damages and $7,500.00 in punitive damages. However, a growing line of cases shows the Commission lacks the statutory authority to grant Sharon such awards. *Fields v. Cummins Employees Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631, 640, determined that "punitive damages are not available under the Indiana Civil Rights Act." *Crutcher v. Dabis* (1991), Ind.App., 582 N.E.2d 449, *trans. denied,* held the commission exceeded its statutory authority when it awarded emotional damages and punitive damages. *See also, Union Twp. Trustee, supra,* at 1121; *Wellington Village, supra,* at 531; *Ind. Civil Rights Com'n v. Midwest Steel* (1983), Ind.App., 450 N.E.2d 130, 140, *reh. denied.* While the Commission attempts to ignore settled case law, we conclude the Commission exceeded its statutory authority in awarding emotional damages and punitive damages.

Because the law does not allow the Commission to grant Sharon emotional distress damages or punitive damages, a remand could only address the issue of pecuniary damages. However, the Commission found that Sharon failed to substantiate her pecuniary damages. Therefore, a remand is pointless.

We reverse the Commission's grant of emotional and punitive damages. The Commission, however, properly granted a cease and desist order against Washburn Realtors which we affirm.

HOFFMAN, J., concurs.

RUCKER, J., concurs in part & dissents in part with opinion.

RUCKER, Judge, dissenting.

I concur with the majority's decision upholding the Commission's cease and desist order against Washburn Realtors for its unlawful discrimination against Sharon Johnson. However, I must respectfully dissent from that portion of the majority's decision reversing the Commission's award of emotional distress damages and punitive damages.

The majority correctly cites decisions of this court holding that the Commission has no power to award emotional distress damages or punitive damages. The leading case and primary authority for this rule is *Indiana Civil Rights Com'n v. Holman* (1978), 177 Ind.App. 648, 380 N.E.2d 1281. Because I believe *Holman* was wrongly decided, it is my opinion the majority's decision is based on precedent which is funda-

mentally flawed. The present rule should be reconsidered and abandoned.[1]

In *Holman,* the First District of this court held that the Commission exceeded its statutory authority by awarding compensatory damages for a racial insult. In so holding the court construed Ind.Code § 22–9–1–6(k)(1), which empowers the Commission as follows:

> [I]f the commission finds a person has engaged in an unlawful discriminatory practice, [it] shall cause to be served on this person an order requiring the person to cease and desist from the unlawful discriminatory practice and requiring such person to take further affirmative action as will effectuate the purposes of this chapter, including but not limited to the power:
>
> > (A) to restore complainant's losses incurred as a result of discriminatory treatment, as the commission may deem necessary to assure justice; however, this specific provision when applied to orders pertaining to employment shall include only wages, salary, or commissions[.]

The *Holman* court offers a two-pronged rationale for its conclusion that Ind.Code § 22–9–1–6(k)(1) does not permit a compensatory award for a racial insult. First, the Legislature intended "losses" to mean only actual pecuniary losses. Second, the statute does not specifically empower the Commission to make such awards.

The court's conclusion that the Legislature intended "losses" to mean only pecuniary losses was offered without any analysis or citation to authority. In my view, absent a precise legislative definition for the word "losses", the General Assembly intended it to be used in its plain, everyday, and common meaning. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App. 590 N.E.2d 154, *trans. denied.* "Losses" has been interpreted to be synonymous with or equivalent to "damages." *Black's Law Dictionary* (1990, 6th Ed.). In turn,

our federal courts have routinely construed the term "actual damages" in 42 U.S.C. § 3612(g)(3), a provision of the Fair Housing Act, analogous to I.C. § 22–9–1–6, to include recovery for humiliation and mental anguish suffered as a result of civil rights violations. *See e.g., Crumble v. Blumthal* (7th Cir.1977) 549 F.2d 462. Given the Commission's mandate to assure justice, I fail to see any principled difference between the term "losses" in our statute and the term "actual damages" in the federal one.

I agree wholeheartedly with Judge Chezem's dissents in *Crutcher v. Dabis* (1991) Ind.App., 582 N.E.2d 449, *trans. denied* and *Indiana Civil Rights Com'n v. Union Twp. Trustee* (1992), Ind.App., 590 N.E.2d 1119, 1121, *trans. denied:*

> It cannot logically be maintained that the emotional distress suffered by a victim of discrimination is not a compensable "loss" under the statute. Assuring justice necessarily requires the making whole of an injured person, and a person found to have suffered emotional distress certainly is not whole.

*Crutcher, supra,* 582 N.E.2d at 452 (Chezem, J., dissenting). Judge Chezem's perspective on the meaning of the term "losses" is far more consistent with traditional concepts of compensation than that of *Holman.*

Indiana Code § 22–9–1–2(f) specifically directs that this state's Civil Rights Act "shall be construed broadly to effectuate its purpose." *Holman* does not acknowledge this directive and I believe the analytical errors of the opinion stem directly from that omission. The legislative mandate permits the Commission to require "further affirmative action as will effectuate the purposes of this chapter ... as the Commission may deem necessary to assure justice." I.C. § 22–9–1–6(k)(1). This is expansive language, indicating a plenary grant of discretionary remedial power. Construed

---

1. I am aware of the rule of statutory construction which provides that the legislature's failure to change a statute after a line of decisions of a court "of last resort" giving the statute a certain construction amounts to acquiescence by the legislature in that judicial construction. *Miller v. Mayberry* (1987) Ind., 506 N.E.2d 7. Our supreme court has not addressed the issue here today. Therefore it remains a proper subject for reconsideration. *Id.*

broadly, this statute expresses a clear intent to provide the Commission with the discretion to fashion relief calculated to remedy the pernicious effects of unlawful discrimination.

My research reveals that the appellate courts in other jurisdictions have come to widely varying conclusions concerning the power of civil rights commissions to make compensatory awards to alleviate the effects of racial humiliation.[2] I believe the better view is that such awards represent a necessary component of the statutory mandate to enforce the remedial policies expressed in civil rights legislation. Here, we should construe I.C. § 22–9–1–6(k)(1) in a manner that gives the Commission the authority to make the expenditure of money the price of unlawful discriminatory conduct. Such construction is consistent with the manifest purpose of the statute—investing the Commission with a meaningful social role in ensuring compliance with civil rights law.

The alternative view, as expressed in *Holman*, leads to an ineffective Commission, unable to carry out its remedial task. I cannot believe it was the intent of the Legislature to establish a remedial policy, create an agency to enforce that policy, endow that agency with the discretionary mandate to achieve substantive justice, and yet fail to give that agency the most basic of tools to exercise its discretion.

For the foregoing reasons, I would refuse to follow *Holman* and its progeny and uphold the Commission's award of emotional distress damages and punitive damages.

2. For a review of relevant case law and an especially thoughtful analysis, *see State Human Rights Comm'n v. Pearlman Realty Agency* (1977), 161 W.Va. 1, 239 S.E.2d 145.