**AIRCO INDUSTRIAL GASES, Slater Steels Corporation, and Liquid Carbonics Corporation, Appellants–Petitioners,**

v.

**INDIANA MICHIGAN POWER COMPANY, Appellee–Respondent.**

No. 93A02–9206–EX–273.

Court of Appeals of Indiana, Fifth District.

May 27, 1993.

John F. Wickes, Jr., Todd A. Richardson, Lewis & Kappes, Indianapolis, for appellants-petitioners.

Mare E. Lewis, Indiana Michigan Power Co., Fort Wayne, Stanley C. Fickle, Teresa E. Morton, Barnes & Thornburg, Indianapolis, for appellee-respondent.

RUCKER, Judge.

Appellants Airco Industrial Gases, Slater Steels Corporation, and Liquid Carbonics Corporation petitioned the Indiana Utility Regulatory Commission for a refund of alleged overcharges for electrical service provided to them by Appellee Indiana Michigan Power Company. The Commission denied the request on grounds the remedy Appellants sought involved retroactive rate making and was thus beyond the Commission's statutory authority. Appellants now appeal, raising two issues for our review which we consolidate and rephrase as: Does the Commission have the authority under the Indiana Code to grant the Appellants' request for a refund? We hold the Commission does have such authority and

therefore reverse the Commission's decision and remand this cause for further proceedings.

Indiana Michigan Power Company (IMP) is a corporation organized under the laws of the State of Indiana and is engaged in the business of granting, purchasing, transmitting, distributing, selling and providing electric utility service to the public. It is therefore a public utility and subject to the jurisdiction of the Indiana Utility Regulatory Commission (the Commission). Appellants (collectively referred to as Airco) are industrial consumers who purchase electrical power from IMP. Prior to February 9, 1989, IMP filed with the Commission two tariffs[1] relevant to the case before us: the Industrial Power (IP) tariff, which specifies a standard rate charged for electrical services provided to industrial consumers, and the Alternative Interruptible Power (IRP) tariff, which specifies a far lower rate than the IP tariff.

Under a contract for electrical power with the IP tariff, a customer's entire contract load capacity was "firm," that is, IMP could not readily interfere with that customer's usage. The IRP tariff on the other hand permitted IMP to request the customer to curtail its usage by up to 75% of its contract load capacity. The remaining 25% was "semi-interruptible," that is, IMP could interfere with the power usage, but only if the customer failed to comply with IMP's request for curtailment.

On February 9, 1989 IMP petitioned the Commission for approval of new electrical service rates and for approval of new rules and regulations pursuant to Ind.Code § 8–1–2–42(a). At that time Airco was part of a group of thirteen businesses located in Northwest Indiana and the City of Fort Wayne, referred to as the Industrial Consumers for Fair Utility Rates (ICFUR). Airco, as a member of ICFUR, intervened in IMP's petition as did General Motors Corporation and Inland Steel Industries (collectively referred to as GM & I/N Tek).

GM & I/N Tek proposed several changes to IMP's terms and conditions, including a recommendation that the customer be given the option of designating which portion of its contract capacity was firm and which portion was interruptible. After conducting extensive hearings, the Commission entered a Rate Order on August 24, 1990, which, among other things, acknowledged that GM & I/N Tek's recommendation was meritorious and directed IMP to revise its IRP tariff "to allow a customer to designate its firm and interruptible load." *Record* at 94. The Commission ordered IMP to file a new schedule of rates and charges with the Engineering Division of the Commission. Shortly thereafter IMP filed its new schedule. However, rather than revising the tariff to include a provision allowing customers to designate their firm and interruptible load, IMP's new schedule deleted the existing provision and replaced it with the "firm and interruptible load" provision. The schedule was accepted and approved by the Engineering Department and IMP proceeded to charge its customers under the terms of the new IRP tariff.

On September 13, 1990, Airco filed a petition for rehearing before the Commission.[2] In its petition Airco objected to that portion of the Commission's Order directing IMP to revise the IRP tariff to allow a customer to designate its firm and interruptible load. Airco did not argue or otherwise raise the issue of whether the revised tariff failed to comply with the Commission's Order. The petition was denied February 6, 1991. Thereafter, on July 17, 1991, the Commission entered its Final Order of Rehearing which resolved certain issues unrelated to this case.

On July 30, 1991, Airco filed a petition designated as an "objection" to the IRP tariff. In this petition Airco for the first time argued that the tariff filed by IMP did

---

1. "Tariff" is a generic term describing the written schedule of rates, charges and relevant rules and regulations in force at a given time. A utility is required to file its tariffs with the Commission pursuant to Ind.Code § 8–1–2–38 & 39.

2. The petition for rehearing as well as subsequent petitions were actually filed by ICFUR. Airco participated as a member of the group. However, ICFUR is not a party to this appeal and for sake of clarity we refer to subsequent petitions as being filed by Airco.

not comply with the Commission's Order of August 24, 1990. Airco requested that the Commission (a) treat the petition as one for rehearing, (b) order IMP to file tariffs consistent with the Commission's Order and (c) grant an appropriate refund or credit to those customers receiving services under the improper tariff. After conducting a hearing the Commission entered an Order on February 5, 1992, acknowledging that the IRP tariff was unlawful and should not have been accepted by the Engineering Division, and directing IMP to file revised tariffs consistent with its August 24 Order as amended by the Final Order of July 17, 1991. The Commission did not address the issue of credits or refunds.

Thereafter, Airco filed a petition seeking: (1) leave to introduce evidence of the amounts which it alleged IMP had unlawfully collected and (2) an Order directing IMP to refund those amounts. On May 27, 1992, the Commission entered an Order denying the petition ruling, among other things, that to grant a refund would constitute retroactive rate making which it had no authority to do. Airco now appeals.

■ In reviewing administrative agency determinations, we are bound by the findings of fact made by the agency if those findings are supported by substantial evidence. *Hamilton County Dept. of Public Welfare v. Smith* (1991), Ind.App., 567 N.E.2d 165, 167–68. However, questions of law are the province of the judiciary and on review the court may set aside any agency determination that is not in accordance with the law. *Board of Trustees of Public Employees' Retirement Fund of Indiana v. Miller* (1988), Ind., 519 N.E.2d 732. When an agency interprets its own statute, the reviewing court should accord the agency's interpretation great weight, but the court is not bound by the agency interpretation and should reverse if the agency incorrectly interpreted the statute. *Hamilton*, 567 N.E.2d at 168.

■ We first acknowledge the Commission does not have the statutory authority to set rates retroactively. In *Indiana Telephone Corp. v. Public Service Commission of Ind.* (1960), 131 Ind.App. 314,

171 N.E.2d 111 we held the statute provided PSC, the predecessor to the IURC, the power to fix rates for the future, not for the past. We determined the Commission could not at one time fix rates for a utility and then at some later time rescind those rates retroactively, fix lower rates, and then require the difference to be refunded to the ratepayers. *Indiana Telephone Corp.*, 171 N.E.2d at 124. However, the grant of a refund does not necessarily amount to retroactive ratemaking. *See e.g., City of Richmond v. Public Service Commission* (1980), Ind.App., 406 N.E.2d 1269 (a Commission order to refund money if utility collected a refund from its power supplier was not retroactive ratemaking); *Indiana Gas Co. Inc. v. Office of Utility Consumer Counselor* (1991), Ind.App., 575 N.E.2d 1044 (setting rates subject to a refund of future overearnings does not violate rule against retroactive ratemaking).

■ Because the Commission has only that power which is bestowed upon it by statute, the question is whether there exists any statutory authority that would allow the relief requested by Airco. IMP argues there is no such authority, rather Ind.Code § 8–1–2–68 governs the Commission's authority with respect to a utility's "rates, tolls, charges and schedules" and limits the Commission's orders in fixing new ones "to be imposed observed and followed in the future." *Appellee's Brief* at 40 quoting I.C. § 8–1–2–68.

We agree with IMP the foregoing statute concerns a utility's "rates, tolls, charges, schedules, or joint rate or rates." When those elements are found to be "unjust, unreasonable, insufficient, or unjustly discriminatory," then the Commission may fix an appropriate rate, toll, charge, schedule, or joint rate to be followed in the future. I.C. 8–1–2–68. In the case before us however, the focus is not on the unreasonableness or insufficiency of the rates or charges collected from Airco by IMP. Rather, the focus is on IMP's conduct in failing to follow the Commission's directive. In that regard Ind.Code § 8–1–2–69 provides in pertinent part:

Whenever ... the commission shall find any ... practices [or] acts ... to be unjust [or] unreasonable ... the commission shall determine and declare and by order fix just and reasonable ... acts [or] practices ... to be ... observed and followed in the future ... *and shall make such other order* respecting such ... act [or] practice ... as shall be just and reasonable.

(Emphasis added.)

In this case the Commission determined the tariff filed by IMP was not in compliance with the Commission's Order of July, 1991 and should not have been approved by the Engineering department. Thus IMP collected and retained monies from ratepayers to which it would not have been entitled but for IMP filing an inappropriate tariff. Allowing IMP to retain funds thus paid by Airco is at least unreasonable. Under the provision of I.C. § 8–1–2–69 the Commission not only had the authority to remedy this matter by issuing an order that would apply prospectively, it also had the authority to "make such other order" concerning IMP's conduct that the Commission deemed just and reasonable. This additional remedy includes the Commission determining whether Airco is entitled to a credit or refund and issuing appropriate orders in relation thereto.

IMP's argument to the contrary notwithstanding, we find support for our decision today in *Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.* (1989), Ind., 548 N.E.2d 153. In that case our supreme court noted I.C. § 8–1–2–69 grants the Commission the authority to issue orders to remedy an "act" or "practice" of a utility that is "unjust" or "unreasonable." *NIPSCO*, 548 N.E.2d at 160. The court determined the foregoing statute vested the Commission with authority to grant ratepayers a refund of interest on funds collected by the utility for a nuclear power plant that was abandoned before construction was completed. According to the court "enjoying the use of ratepayers' funds for, in some instances here, over eight years, without compensating those ratepayers for the use, falls squarely within the category of an unjust or unreason-

able practice or act." *Id.* at 161. In like fashion, allowing IMP to retain funds paid by Airco as a result of IMP filing an inappropriate tariff falls squarely within the category of an unjust or unreasonable practice or act.

We hold that under the facts of this case, the Commission would not be engaging in retroactive ratemaking by granting Airco's request for an appropriate refund or credit. The Commission's order to the contrary is reversed and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

BARTEAU and CONOVER, JJ., concur.