STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS and Indiana Professional Licensing Agency, Appellants–Respondents,

v.

**David R. EBERENZ, Appellee–Petitioner.**

No. 10A04–9805–CV–237.

Court of Appeals of Indiana.

Nov. 17, 1998.

Rehearing Denied Jan. 22, 1999.

Jeffrey A. Modisett, Attorney General, K.C. Norwalk, Deputy Attorney General, Indianapolis, for Appellants–Respondents.

C. Gregory Fifer, Clarksville, for Appellee–Petitioner.

## OPINION

MATTINGLY, Judge.

The State Board of Registration for Professional Engineers (the Board) and the Indiana Professional Licensing Agency (the Agency) appeal the trial court's grant of summary judgment in favor of David R. Eberenz. The issues presented for review are restated as follows:

    I. Whether the trial court erred by finding that the Board's action was not in accordance with law.

    II. Whether the trial court erred by rendering summary judgment.

    III. Whether the trial court erred by ordering the Board to enter, in its official records, Eberenz's registration as an Indiana professional engineer.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant facts in this case are not in dispute. Eberenz has been registered as a professional engineer in Kentucky since early 1995. In late August or early September of 1996, Eberenz filed with the Agency his application for comity registration as an Indiana professional engineer. On October 7, 1996, the Board denied Eberenz's application, noting Eberenz's "[l]ack of 6 hours calculus which must include 3 hrs [sic] of advanced calculus and 3 hours calculus-based

physics." R. at 46. Eberenz sought administrative review of the Board's decision to deny his application. On March 25, 1997, an administrative law judge (A.L.J.) issued an order denying Eberenz's application.[1] Eberenz then sought review of the A.L.J.'s decision before the full Board. On May 30, 1997, the full Board issued its final order in which it affirmed and adopted the A.L.J.'s order.

Eberenz petitioned the trial court for judicial review of the full Board's final order. He subsequently filed a motion for summary judgment. In his brief supporting that motion, Eberenz requested that the trial court reverse the Board's final order and also decree that he be registered, pursuant to the principle of comity, as an Indiana professional engineer. On February 12, 1998, the trial court granted Eberenz summary judgment in an order which was supported by enumerated findings and which held, among other things, that the Board's decision was not in accordance with law and was not supported by the evidence. The trial court then remanded the cause to the Board and the Agency (hereinafter referred to collectively as "the Board") "with instructions to take the appropriate action regarding [Eberenz's] comity application consistent with the findings of this order[.]" R. at 172.

After filing a praecipe for appeal, the Board, pursuant to Indiana Trial Rule 62, motioned the trial court for a stay of its summary judgment order pending appeal. On May 12, 1998, the trial court denied the Board's motion for a stay and ordered the Board "to enter in [its] official records the registration by comity of [Eberenz] as an Indiana professional engineer, within ten (10) days after entry of this order." R. at 201.

On June 24, 1998, the Board issued Eberenz an Indiana professional engineer license.

On June 25, 1998, the Board filed, in this court, a motion for a stay pending appeal. The motion specifically requested a stay of (1) the trial court's summary judgment order of February 12, 1998 and (2) the trial court's May 12, 1998 order denying the Board's motion for a stay pending appeal. After hearing oral argument, we denied the motion for a stay on July 21, 1998.

## STANDARD OF REVIEW

A court reviewing an administrative decision is limited to determining whether the agency had subject-matter jurisdiction and whether the agency's decision was made upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principles. *Shoot v. State, Family & Soc. Servs. Admin.,* 691 N.E.2d 1290, 1292 (Ind.Ct.App.1998). On judicial review, we are bound by the agency's findings of fact if those findings are supported by substantial evidence. *Airco Indus. Gases v. Indiana Mich. Power Co.,* 614 N.E.2d 951, 953 (Ind.Ct.App.1993). However, we owe an agency's conclusions of law no deference, *see Twin States Publ'g Co. v. Indiana Unemployment Ins. Bd.,* 678 N.E.2d 110, 112 (Ind.Ct.App.1997), *trans. denied,* as any agency determination that is not in accordance with the law may be set aside. *Airco,* 614 N.E.2d at 953. When the facts are undisputed and the question is whether those facts lead to a particular conclusion, a question of law is presented and we need not defer to agency decision-making. *See Twin States,* 678 N.E.2d at 112.

---

1. As did the Board, the A.L.J. found that Eberenz suffered from a "lack" of education credit. However, the A.L.J.'s view of exactly what credit Eberenz was lacking seems to have differed from the view expressed by the Board when it denied Eberenz's application. The A.L.J.'s order states in part:

> 3. .... In its initial determination, the Board specifically found [Eberenz's] education deficient because of a lack of three semester credit hours of calculus, three semester credit hour[s] of advanced calculus based mathematics and three semester credit hours of calculus based physics.

> 4. [Eberenz] took Elementary Calculus I and II (three hours each) for which he is entitled to six hours credit toward the calculus requirement. However, he does not have any other calculus or advanced calculus based mathematics classes and therefore is deficient three semester credit hours of calculus and three semester credit hours of advanced calculus based mathematics.

> 5. [Eberenz] is deficient three semester credit hours of calculus based physics.

R. at 94–95.

## DISCUSSION AND DECISION

### I. *Propriety of the Board's Action*

A. Whether the Board may require that the education requirements set forth in Indiana Administrative Code title 864, rule 1.1–2–2, be satisfied by one who applies, pursuant to the principle of comity, for registration as an Indiana professional engineer

#### 1. The Meaning of "Comity"

Indiana Code Section 25–31–1–21 states that:

The board may, upon application and payment of a fee established by the board in the board's rules, issue a certificate of registration as a professional engineer to an individual who holds a valid certificate of registration as a professional engineer, issued to the applicant by the proper authority of any state or territory or possession of the United States if the requirements for registration of professional engineers that the certificate of registration was issued under do not conflict with the provisions of this chapter.

This statute sets forth what the parties describe as "comity" registration. We begin our analysis by determining precisely what meaning should attach to comity within the context of Indiana Code Section 25–31–1–21.

This court has held that the doctrine of comity "represents a willingness to grant a privilege, not as a matter of right, but out of deference and good will. Its primary value is to promote uniformity of decision by discouraging repeated litigation of the same question." *County of Ventura, State of California v. Neice*, 434 N.E.2d 907, 910 (Ind.Ct.App.1982) (quoting *State of Florida ex rel. O'Malley v. Department of Ins.*, 155 Ind.App. 168, 176–77, 291 N.E.2d 907, 912 (1973)). Comity has been accurately described as "a principle applied voluntarily by one state or nation in its conduct toward another state or nation; and it is applied by such state not only in the acts of its judiciary, but also in the acts of its legislative and its administrative agencies." *In re Fischer's Will*, 119 N.J. Eq. 217, 181 A. 875, 878 (N.J.Prerog.Ct.1935).

Comity, broadly defined, means reciprocity. *See Strobl v. Sawicki*, 41 Misc.2d 923, 247 N.Y.S.2d 12, 15 (N.Y.Fam.Ct.1964) (" 'Comity means, generally[,] reciprocity' .... '[C]omity is a sense of mutual regard founded on identity of position and similarity of institutions[.]' ") (citations omitted). The nature of this reciprocity was well-explained in *Fischer's Will:*

Whether the action which is based on comity be that of the judicial, or the administrative or the legislative agency, that action is taken either as an actual reciprocation for similar action previously taken by the other state or in the expectation that the other state will similarly reciprocate. "Comity means that we will do, by courtesy, what they would do under like circumstances, with a citizen of our state."

181 A. at 878 (quoting *Rutledge v. Krauss*, 73 N.J.L. 397, 63 A. 988, 990 (N.J.1906)). The concept of reciprocity is instantiated by Indiana Code Section 25–31–1–21, which, in providing that out-of-state engineers may be registered to practice their trade in our state, ensures that Indiana engineers may be so registered in other jurisdictions. We conclude that comity, within the context of Indiana Code Section 25–31–1–21, must be understood to mean reciprocity.

#### 2. Applicability of Indiana Administrative Code title 864, rule 1.1–2–2

Indiana Administrative Code title 864, rule 1.1–2–2 states in part:

(a) This section establishes the minimum education and experience requirements under IC 25–31–1–12 for admission to the professional engineer examination.

. . . .

(c) The education of all applicants except those who have obtained a baccalaureate in an approved engineering curriculum must include the following:

(1) At least twelve (12) semester credit hours in college level mathematics, excluding college algebra and trigonometry, which must include a minimum of nine (9) semester credit hours of calculus and a minimum of three (3) semester credit hours of advanced calculus based mathematics.

(2) At least eight (8) semester credit hours in college level courses in the physical sciences which must include a minimum of three (3) semester credit hours of calculus based physics and a minimum of three (3) semester credit hours of laboratory-based chemistry.

(3) At least twelve (12) semester credit hours of engineering sciences which require calculus as a prerequisite or corequisite.

The parties appear to agree that Eberenz was denied comity registration because he, in the Board's view, did not satisfy the above education requirements.

The Board claims that a comity applicant must satisfy these education requirements. The Board asserts that its purpose is the enforcement of standards for "the competent practice of engineering." It apparently fears that its purpose will be thwarted if comity applicants are not subject to the education requirements of Indiana Administrative Code title 864, rule 1.1–2–2. The Board asserts that "[b]ecause Eberenz does not meet the educational requirements of 864 IAC 1.1–2–2, Eberenz is not entitled to a license...." Brief of Appellants at 7. We disagree with the Board.

An issue similar to the one under consideration here was addressed in *Rawson v. Idaho State Board of Cosmetology*, 107 Idaho 1037, 695 P.2d 422 (Idaho Ct.App.1985).[2] In that case, Glenda Rawson, a licensed cosmetologist in Utah, submitted an application for an Idaho license. The Idaho statute providing for reciprocity licensure stated:

The board, upon application and the payment of the fee required therefor, shall issue a license without examination to any person who holds a certificate of qualification or license issued to him by the proper authority of any state, territory or possession of the United States, or of a foreign country, provided that the requirements for license under which the certificate was issued are of a standard not lower than those specified in this chapter, or upon proof that said person has practiced the pursuit for which license is requested for

at least three (3) years prior to such application. The board shall evaluate the applications for license by reciprocity. No reciprocal license shall be issued except by the board.

*Id.* at 424 (quoting Idaho Code Section 54–812). The Idaho Board of Cosmetology returned the application submitted by Rawson because it did not reveal that she had satisfied an educational standard contained in a Board rule, which required that "[a]pplication for a license by reciprocity must be accompanied by ... proof of having satisfactorily completed at least two (2) years of high school (tenth grade) or equivalent education." *Id.* (emphasis deleted). Rawson sought a declaratory judgment that the Board rule at issue "was invalid because the educational standard went beyond the requirements prescribed by statute for reciprocal licensing of cosmetologists from other states." *Id.* The lower court granted declaratory judgment in Rawson's favor.

On appeal, the Idaho Board argued that the statutory requirements for reciprocity licensure were ambiguous, contending that the educational standard imposed by its rule could supplement the statutory requirements. The Idaho court of appeals found the Board's argument illogical, noting that "[i]f the statute were ambiguous ... the Board could supply the proper meaning by adopting a clarifying rule. But the educational standard in [the Board's rule] goes beyond clarification of any ambiguity in the statute. It imposes a separate, additional requirement for licensure." *Id.* The court then disposed of other arguments advanced by the Board:

The Board further argues that even if the statutory requirements are not ambiguous, neither are they exhaustive. Because the statute commands the Board to "issue a license without examination," the Board would have us infer that the Board retains the power to impose additional requirements other than examinations. However, this argument disregards the remainder of the statute which, as we read it, requires the applicant to show not only

---

2. Particular language in *Rawson* that addressed an unrelated question was expressly rejected in

*Golay v. Loomis*, 118 Idaho 387, 797 P.2d 95, 99 n. 3 (Idaho 1990).

that she holds a valid license in another state but also either that the standards in the other state are as high as those in Idaho or that she has engaged in licensed practice for three years. The comparison of state standards, and the requirement of three years' licensed practice if Idaho's standards are higher than those of the other state, would be largely superfluous if the Board could impose all Idaho requirements other than examinations. A statute must be construed, if possible, so that effect is given to all its provisions. Accordingly, in this case we reject the Board's narrow focus upon the words "without examination."

The Board also hypothecates its authority to prescribe an educational standard upon that part of the statute which reads, "The board shall evaluate the applications for license by reciprocity." However, this language does not authorize the promulgation of additional, nonstatutory requirements for reciprocity licensure. Rather, consistent with our reading of the statute, this language directs the Board to ascertain the validity of the license an applicant claims to hold in another state and, if the license is valid, to determine either that the standards of the other state are as high as those established in Idaho or that the applicant has engaged for at least three years in the licensed practice of cosmetology.

*Id.* at 425 (citation omitted). The court went on to uphold the lower court's "declaration that [the Board's rule] is invalid, insofar as it purports to impose in this case an educational standard unauthorized by the reciprocity statute." *Id.*

Although the issue resolved in *Rawson* is slightly different from the one being considered here, we nevertheless find that *Rawson*'s reasoning can be properly applied in this case. The comity registration provisions of Indiana Code Section 25–31–1–21 unambiguously require (1) an application, (2) the payment of a fee established by the Board,

(3) the applicant's possession of a valid out-of-state certificate of registration as a professional engineer, and (4) the absence of a conflict between the provisions of Indiana Code Chapter 25–31–1 and the requirements for registration of professional engineers under which the applicant's valid out-of-state certificate of registration was issued. No language in Indiana Code Section 25–31–1–21 indicates the existence of an additional education requirement for comity registration. We do not believe the Board may engraft such a requirement into this statute by insisting that Eberenz satisfy the strictures of Indiana Administrative Code title 864, rule 1.1–2–2.

We note the well-settled principle that an administrative board "may not by its rules and regulations add to or detract from the law as enacted[.]" *Indiana Dep't of State Revenue v. Best Ever Cos., Inc.,* 495 N.E.2d 785, 787 (Ind.Ct.App.1986) (quoting *Indiana Dep't of State Revenue v. Colpaert Realty Corp.,* 231 Ind. 463, 479–80, 109 N.E.2d 415, 422–23 (1952)) (emphasis deleted). The Board's action in requiring Eberenz to meet non-statutory education standards adds to the comity registration requirements established by our General Assembly, thus contravening this principle of law. We further note that, in light of the canon of statutory construction requiring us to give effect and meaning to every word of a statute, *e.g., Indiana Alcoholic Beverage Comm'n v. 21st Amendment, Inc.,* 626 N.E.2d 590, 593 (Ind. Ct.App.1993), the Board's demand that Eberenz satisfy the education requirements of the Indiana Administrative Code must be viewed as rendering superfluous the comity registration provisions of Indiana Code Section 25–31–1–21. We conclude that Eberenz, as a comity applicant, cannot be required to satisfy the education requirements of Indiana Administrative Code title 864, rule 1.1–2–2. The Board, in applying these education requirements against Eberenz, did not act in accordance with law. The trial court did not err in so finding.[3]

---

**3.** The Board also alleges error as follows: (1) "the reviewing trial court failed to consider the educational requirements Eberenz needs to satisfy before he can become an Indiana professional engineer"; (2) "the reviewing trial court failed to accord 'significant weight' to the Board's interpretation of the education requirements set forth in 864 IAC 1.1–2–2"; and (3) "the reviewing trial

We are confident that our construction of Indiana Code Section 25–31–1–21 effectuates the intent of our General Assembly which, in the past, has shown that it knows how to, and can, impose additional education requirements on those who apply for reciprocal licensing in Indiana. *See* Ind.Code § 25–19–1–10(a)(1)–(2) ("The board may issue a health facility administrator's license to any person who holds a current comparable license from another jurisdiction, if the board finds that the applicant has ... met the educational requirements of the board ... [and] completed a board approved training program or board determined equivalent[.]"). *See also* Ind.Code § 25–13–1–17(a)(1), (5) ("The board may issue a license upon payment of the fee set by the board under section 5 of this chapter by an applicant who furnishes satisfactory proof that the applicant ... is a dental hygienist ... [and] has completed at least fourteen (14) hours of continuing education in the previous two (2) years."); Ind. Code § 25–14–1–16(b)(4) ("The board may issue a license upon payment of a fee, set by the board under section 13 of this chapter, to an applicant who furnishes proof satisfactory to the board that the applicant is a dentist who ... has completed at least twenty (20) hours of continuing education in the previous two (2) years[.]"); Ind.Code § 25–33–1–9(a)(6)–(7)(A) ("The board shall issue a license to practice psychology to an individual who ... possesses a doctoral degree from a recognized institution of higher learning ... [and] has successfully completed ... a degree program....").

In support of its position, the Board directs us to Indiana Code Section 25–31–1–7(a), which states:

The board shall enforce and administer the provisions of this chapter, and adopt rules, not inconsistent with the Constitution and laws of this state, as may be reasonably necessary for the proper performance of its duties and the regulations of the proceedings before it. The board shall adopt rules establishing standards for the competent practice of engineering. Any rule-

making by the board shall be in accordance with IC 4–22–2.

That this statute grants legitimate rule-making authority cannot be denied. However, the language of Indiana Code Section 25–31–1–7(a) does not authorize the creation and imposition of nonstatutory comity registration requirements—requirements which, as indicated above, may not be added to the registration provisions that Indiana Code Section 25–31–1–21 unambiguously sets forth.

The Board also supports its position with our decision in *State Board of Registration for Land Surveyors v. Bender*, 626 N.E.2d 491 (Ind.Ct.App.1993). In that case, Bender's application to take the land surveyors examination was denied by the State Board of Registration for Land Surveyors because Bender lacked educational requirements that the Board had established in the Indiana Administrative Code. When Bender sought administrative review of the Board's decision, his application was again denied, initially by an A.L.J. and subsequently by the full Board. Bender petitioned the trial court for review of the administrative action. The trial court vacated the Board's decision, instructing the Board to permit Bender to take the examination. The Board appealed to this court.

Among the issues on appeal was whether the trial court erred in holding that the educational requirements established by the Board were in excess of its statutory authority. The Board's statutory authority was set forth in an Indiana Code section that stated in part:

The following shall be considered as minimum evidence that the applicant is qualified for registration as a land surveyor:

. . . .

... A specific record of eight (8) years or more of land surveying education and experience in land surveying work, which indicates that the applicant has acquired knowledge and skill and practical experience in land surveying work approximating

---

court ignored the Board's determination that Eberenz did not meet educational requirements and overturned the Board's expert conclusions when it drew a different conclusion from the

evidence." Brief of Appellants at 9–10. We do not address these allegations in light of our holding above.

that required for registration as a professional land surveyor.... *Bender,* 626 N.E.2d at 494 (citing a section of the Indiana Code recodified at Indiana Code Section 25–21.5–5–2). Additional education requirements, however, existed in an Indiana Administrative Code rule adopted by the Board. Among the rule's requirements was the successful completion of college level credit hours in fundamentals of land surveying, mathematics, and the physical sciences.

Bender conceded that he did not have the college level credit hours required by the Board's administrative rule. He noted, however, that the Board's statutory authority merely required that an applicant have a combination of eight years or more of land surveying education and experience. Bender argued that the college courses required by the administrative rule were not required by statute and that the Board, "by adopting a requirement to the contrary ... has attempted to impose additional and different minimum educational requirements." *Id.* at 495.

Finding that the educational requirements established by the Board were within its statutory authority, we reversed the trial court, observing the following:

"Land Surveyor" is defined as a "person who, by reason of his *special knowledge of mathematics and surveying principles and methods* which are *acquired by education* and practical experience, is qualified to engage in the practice of land surveying as attested by his registration as a land surveyor." The Legislature has authorized the State Board of Registration to "adopt rules establishing standards for the competent practice of ... land surveying." Those standards necessarily include specific educational requirements. It is true, as Bender asserts, the enabling legislation requires noncollege graduates to have a combination of eight (8) years or more of land surveying education and experience. However, other than stating that the education must indicate that an applicant has acquired the knowledge, skill, and practical experience in land surveying work approximating that required of a degreed applicant, the statute is silent on the quality, quantity, or meaning of a "land surveying education." If the Board had not adopted ascertainable educational standards, then any decision denying an applicant the opportunity to take the Land Surveyors Examination on educational grounds would violate due process. The requirement of ascertainable standards is designed to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary.

By adopting a regulation outlining specific educational requirements, the Board acted within the scope of its statutory authority.

*Id.* at 495–96 (citations omitted).

The result we reach is consistent with *Bender.* In *Bender,* the specific education requirements imposed by rule merely clarified the meaning of an education requirement that was already present in the relevant statute. Here, however, the Board did not adopt a clarifying rule, but rather imposed an education requirement that had not previously existed.

The Board claims that, "[i]f Eberenz were to prevail, applicants from foreign jurisdictions could obtain engineering licenses in Indiana without ever completing the education the Board demands of Indiana's own engineers." Brief of Appellants at 7. This claim is accurate. However, "[t]he function of a reciprocity provision in a professional licensing scheme is to facilitate the licensing of persons already admitted to practice the particular profession in a foreign jurisdiction by *eliminating certain qualification requirements* of those applicants." *Arizona State Bd. of Accountancy v. Cole,* 119 Ariz. 489, 581 P.2d 1139, 1142 (Ariz.1978) (emphasis added). It is not for us to rewrite the reciprocal licensing scheme established by Indiana Code Section 25–31–1–21.[4]

B. Whether the Kentucky requirements for registration of professional engineers conflict with the provisions of Indiana Code Section 25–31–1–21

Indiana Code Section 25–31–1–21 requires that there be no "conflict" between the provi-

---

4. The Board makes no argument that Indiana Code Section 25–31–1–21 is unconstitutional.

sions of Indiana Code Chapter 25–31–1 and the requirements for registration of professional engineers under which an applicant's valid out-of-state certificate of registration was issued. The Board argues that there is a conflict here and that, therefore, Eberenz is not entitled to comity registration.

In our view, the Board enjoys wide discretion in determining whether there exists a "conflict" within the meaning of Indiana Code Section 25–31–1–21. *Cf. Sutto v. Board of Med. Registration and Examination*, 242 Ind. 556, 563, 180 N.E.2d 533, 537 (1962) ("Whether or not the qualifications and requirements provided by the law of the State where the applicant has previously been licensed are substantially equivalent to those required by the Chiropractic Act of Indiana is a question of fact to be determined by the Board."). If the Board had determined that such a conflict existed, then we would review the Board's determination for an abuse of discretion. Our review of the record, however, does not reveal that the Board determined the existence of a conflict to be a basis for denying Eberenz registration as a professional engineer.[5] Were we to determine that a conflict exists, we would be exercising a discretionary function that only the Board enjoys. Our role in this instance, however, is not to assume an agency function, but is rather to review that function's discretionary exercise. We decline to exercise the Board's discretionary function on appeal.

### II. *The Rendering of Summary Judgment*

According to the Board, the trial court committed error by rendering summary judgment in this case. The Board claims that the summary judgment standard is not applicable in judicial review of agency action. It further claims that Eberenz had the burden of demonstrating the invalidity of agency action.

No issue of error is presented here because the Board has failed to allege that it was prejudiced by the rendering of summary judgment. *See Red Arrow Ventures, Ltd. v. Miller*, 692 N.E.2d 939, 947 (Ind.Ct.App. 1998), *trans. denied.* Even if prejudice had been alleged, however, we would fail to find it. It is true that, with respect to the manner in which facts are construed, tension may exist between the summary judgment standard and the typical standard of review for agency action. However, application of the wrong standard to the facts of this case did not result in prejudice to the Board because the relevant facts were not in dispute. Nor can we say that application of the summary judgment standard resulted in an erroneous judgment, inasmuch as the Board did not act in accordance with law.

### III. *The Ordering of Eberenz's Registration*

The Board claims that the trial court committed error by ordering the Board to enter, in its official records, Eberenz's registration as an Indiana professional engineer. It argues that the trial court only had the power to remand the case to the agency for further proceedings.

Indiana Code Section 4–21.5–5–15 states that:

---

**5.** In his order denying Eberenz's registration application, the A.L.J. found as a fact that Eberenz:

is an applicant for registration by reciprocity . . . and was denied because he obtained his license under requirements which *conflict* with the requirements for registration in Indiana. The reason for denial specifically concerned whether he meets the educational and examination requirements.

R. at 94 (emphasis added). Whether this finding of fact is erroneous we do not decide. Even if this finding were accurate, however, we would be unable to conclude that Eberenz's application was denied on the basis of a "conflict" that Indiana Code Section 25–31–1–21 contemplates. That statute, the plain language of which re-

quires only that Kentucky's registration requirements not conflict with the provisions "of this chapter," makes it clear that it is the provisions of Indiana Code Chapter 25–31–1, and not those of the Indiana Administrative Code, with which Kentucky's requirements must be compared. We find no indication that the Board denied Eberenz's application on the basis of a conflict between Kentucky's registration requirements and the provisions of Indiana Code Chapter 25–31–1. To the extent that the Board might have found the existence of a conflict, such a finding could only have resulted from comparing Kentucky's registration requirements with the provisions of the Indiana Administrative Code.

If the court finds that a person has been prejudiced under section 14 of this chapter, the court may set aside an agency action and:

(1) remand the case to the agency for further proceedings; or

(2) compel agency action that has been unreasonably delayed or unlawfully withheld.

In *Indiana Alcoholic Beverage Commission v. Edwards,* 659 N.E.2d 631, 636 (Ind.Ct. App.1995), a case cited by the Board in support of its position, we said of a statute whose language was substantially the same as Indiana Code Section 4–21.5–5–15:

The express intent of this part of the statute is to limit the reviewing court's authority to remand the case to the administrative agency for further proceedings after a proper determination that the agency's decision was contrary to law. If upon remand the agency unlawfully withholds or unreasonably delays the redetermination of the case, then the trial court may compel agency action by direct order. Otherwise the reviewing court does not have power to compel agency action as part of the initial review function. It may only remand the cause for rehearing.

(Quoting *Indiana Alcoholic Beverage Comm'n v. Johnson,* 158 Ind.App. 467, 476–77, 303 N.E.2d 64, 69 (1973)).

*Edwards,* although it accurately states the law, does not address a situation in which a remand to the agency would be pointless and unnecessary. Just such a situation, however, was addressed in *Indiana Civil Rights Commission v. Union Township Trustee, Union Township, Montgomery County,* 590 N.E.2d 1119 (Ind.Ct.App.1992). In that case, a complaint alleging sexual harassment was filed with the Indiana Civil Rights Commission. The Commission awarded the complainant emotional distress damages and punitive damages. After the trustee serving Union Township sought judicial review, the trial court reversed the Commission's award and remanded for further proceedings. On appeal, we upheld the reversal of the Commission's award, finding that the Commission exceeded its delegated authority by granting emotional distress damages and punitive

damages. We went on to conclude, however, that the trial court's remand for further proceedings was unnecessary. In reaching this conclusion, we noted that:

The law does not allow the [Commission] to grant [the complainant] emotional distress and punitive damages. A remand, then could only address the issue of pecuniary damages. The [Commission's] ruling, however, excluded any pecuniary damage recovery. First, it awarded only emotional distress and punitive damages, thus implicitly rejecting a pecuniary damage award. Second, it explicitly found "[the complainant] has not proven by a preponderance of the evidence that she lost any wages, salary, or commissions that she would otherwise have received...." And if [the complainant] had not, in fact, initially sought pecuniary damages, she would be precluded from raising the issue on ‚remand. Therefore, a remand is pointless.

*Id.* at 1122 (citation omitted).

In light of our decision in *Indiana Civil Rights Commission,* we conclude that remand to the Board was unnecessary in this case. The record reveals that the first three requirements of Indiana Code Section 25–31–1–21 were satisfied, as Eberenz applied for registration as an Indiana professional engineer, paid the fee established by the Board, and showed that he held a valid out-of-state certificate of registration as a professional engineer. *See* R. at 114, 116, 119. As for the fourth requirement, we are convinced that the Board, by basing its denial of Eberenz's application on the non-satisfaction of particular education requirements set forth in the Indiana Administrative Code, implicitly rejected the notion that Eberenz's application should be denied on the basis of a "conflict" within the meaning of Indiana Code Section 25–31–1–21. *Cf. Indiana Civil Rights Commission,* 590 N.E.2d at 1122 ("[The Commission] awarded only emotional distress and punitive damages, thus implicitly rejecting a pecuniary damage award.").

We therefore find that all requirements of Indiana Code Section 25–31–1–21 were satisfied in this case. The necessary implication of this conclusion is that Eberenz demon-

strated his eligibility for registration as an Indiana professional engineer. Under these circumstances, a remand to the agency for further proceedings would have been a pointless exercise, because the only proper course of action left to the Board was to register Eberenz as an Indiana professional engineer. In not remanding, and in entering judgment in Eberenz's favor by ordering his registration, the trial court did not err. *See id.*

## CONCLUSION

The Board did not act in accordance with law when it required that Eberenz satisfy the education requirements of Indiana Administrative Code title 864, rule 1.1–2–2. In addition, the trial court's application of the summary judgment standard in this case did not result in prejudice to the Board. Finally, the trial court did not err by ordering the Board to enter, in its official records, Eberenz's registration as an Indiana professional engineer.

Affirmed.[6]

DARDEN and RILEY, JJ., concur.

---

6. In this appeal, Eberenz has requested that the Board be sanctioned pursuant to Indiana Appellate Rule 15(G). Eberenz's request is denied because the Board is *not subject to an Appellate* Rule 15(G) damage award. *See State v. Denny,* 273 Ind. 556, 556–57, 406 N.E.2d 240, 240–41 (1980).