STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS, and Indiana Professional Licensing Agency, Appellants (Defendants below),

v.

David R. EBERENZ, Appellee (Plaintiff below).

No. 10S04–0002–CV–90.

Supreme Court of Indiana.

Feb. 10, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, K.C. Norwalk, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellants.

C. Gregory Fifer, Clarksville, Indiana, Attorney for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The state board that licenses professional engineers in Indiana denied an out-of-state engineer's application to practice here on grounds that he did not satisfy the board's educational requirements. A trial court and the Court of Appeals held that the board did not have authority under the out-of-state engineer licensing statute to impose the educational requirements. We find the educational requirements within the board's authority and its decision otherwise proper.

### Background

Eberenz has been registered as a professional engineer in Kentucky since early 1995. In late August or early September of 1996, Eberenz filed with the Indiana Professional Licensing Agency ("Agency") his application for comity registration as an Indiana professional engineer. In a letter dated October 7, 1996, the State Board of Registration for Professional En-gineers ("Board") denied Eberenz's application, citing his failure to satisfy the education requirements established by the Board and outlined in Indiana's Administrative Code. *See* Ind. Admin. Code tit. 864, r. 1.1–2–2(c) (1996). Eberenz had not completed the curriculum in calculus that is required for licensing as a professional engineer in Indiana, specifically lacking three hours of advanced calculus and three hours of calculus-based physics. Eberenz sought administrative review of the Board's decision to deny his application.

On March 25, 1997, an administrative law judge ("ALJ") issued an order denying Eberenz's application finding that he suffered from a "lack" of education credit. Eberenz then sought review of the ALJ's decision before the full Board. On May 30, 1997, the full Board issued its final order in which it affirmed and adopted the ALJ's order.

Eberenz then petitioned the trial court for judicial review of the full Board's final order. He subsequently filed a motion for summary judgment. In his brief supporting that motion, Eberenz requested that the trial court reverse the Board's final order and also decree that he be registered, pursuant to the principle of comity, as an Indiana professional engineer. On February 12, 1998, the trial court granted Eberenz summary judgment in an order which was supported by enumerated findings and which held, among other things, that the Board's decision was not in accordance with law and was not supported by the evidence. The trial court then remanded the cause both to the Agency and the Board "with instructions to take the appropriate action regarding [Eberenz's] comity application consistent with the findings of this order." (R. at 172.)

The Board appealed the trial court's grant of summary judgment,[1] and the

---

1. After filing a praecipe for appeal, the Board, pursuant to Indiana Trial Rule 62, asked the trial court for a stay of its summary judgment order pending appeal. On May 12, 1998, the trial court denied the Board's motion for a stay and ordered the Board "to enter in [its] official records the registration by comity of [Eberenz] as an Indiana professional engi-

Court of Appeals affirmed. *State Bd. of Registration for Prof'l Eng'rs v. Eberenz,* 701 N.E.2d 892, 902 (Ind.Ct.App.1998).

## Discussion

Indiana Code § 25–31–1–21 (1993) provides the rule of law for "reciprocal" or "comity" registration of out-of-state professional engineers. It states in relevant part that the

[B]oard may, upon application and payment of a fee established by the [B]oard in the [B]oard's rules, issue a certificate of registration as a professional engineer to an individual who holds a valid certificate of registration as a professional engineer, issued to the applicant by the proper authority of any state or territory or possession of the United States if the *requirements for registration* of professional engineers that the certificate of registration was issued under do not *conflict* with the *provisions* of this chapter.

*Id.* (emphases added). Therefore, we must determine whether the Board prop-

neer, within ten (10) days after entry of this order." (R. at 201.) On June 24, 1998, the Board issued Eberenz an Indiana professional engineer license.

On June 25, 1998, the Board filed a motion for stay pending appeal with the Court of Appeals. The motion specifically requested a stay of (1) the trial court's summary judgment order of February 12, 1998, and (2) the trial court's May 12, 1998, order denying the Board's motion for a stay pending appeal. After hearing oral argument, the Court of Appeals denied the motion on July 21, 1998.

**2.** To justify its determination that the Board did not act in accordance with the law in requiring Eberenz to meet non-statutory education standards, the Court of Appeals cited two tax cases for the "well-settled principle that an administrative board 'may not by its rules and regulations add to or detract from the law as enacted.'" *Eberenz,* 701 N.E.2d at 897 (emphasis omitted) (quoting *Indiana Dep't of State Revenue v. Best Ever Cos.,* 495 N.E.2d 785, 787 (Ind.Ct.App.1986) (quoting in turn *Indiana Dep't of State Revenue v. Colpaert Realty Corp.,* 231 Ind. 463, 479–80, 109 N.E.2d 415, 422–23 (1952))).

We believe reliance on this quotation, "may not by its rules and regulations add to or

erly applied the relevant *"provisions"* or *"requirements for registration,"* when it denied Eberenz his comity application on the grounds that he obtained his Kentucky engineer license under provisions or requirements which "conflict" with those established for registration in Indiana.

## I

The Court of Appeals determined that the Board did not act in accordance with Indiana law in denying Eberenz's comity application because "[n]o language in Indiana Code Section 25–31–1–21 indicates the existence of an additional education requirement [outside the statute] for comity registration." *Eberenz,* 701 N.E.2d at 897. Thus, the Court of Appeals reasoned, the Board improperly "engraft[ed] such a requirement into this statute by insisting that Eberenz satisfy the strictures of Indiana Administrative Code title 864, rule 1.1–2–2." *Id.*[2] The Board counters that it "is permitted to promulgate rules" prescribing the appropriate educational requirements because the legislature "[did] not specify exactly what educational re-

detract from the law as enacted," was inappropriate here because the context of the *Best Ever* and *Colpaert Realty* cases was different. In those cases, the Department of Revenue promulgated additional regulations which were inconsistent with specific requirements already addressed in the legislatively enacted statutes. Indeed, the full paragraph in the *Colpaert Realty* opinion begins:

An administrative board has the *undoubted right to adopt rules and regulations* designed to enable it to perform its duties and to effectuate the purposes of the law under which it operates, when such authority is delegated to it by legislative enactment. But it may not make rules and regulations *inconsistent with the statute* which it is administering, [and] it may not by its rules and regulations add to or detract from the law as enacted. . . .

231 Ind. at 479–80, 109 N.E.2d at 422–23 (emphases added) (citations omitted).

As we will demonstrate *infra,* Indiana Code § 25–31–1 is silent as to the quality, quantity, or meaning of an *"engineering education"* as required by Indiana Code § 25–31–1–12(a). As such, the *Best Ever* and *Colpaert Realty* cases are inapplicable.

quirements are necessary for licensure," leaving that determination to the Board's rule-making authority. *See* Appellants' Br. in Support of Transfer at 8–9. We agree with the Board.

### A

We begin our analysis by identifying Indiana's basic licensing requirements. Indiana Code § 25–31–1–12(a) (1993) establishes the minimum evidence, or "requirements for registration," that must be demonstrated by an applicant in order to qualify for registration as a professional engineer. The statute reads as follows:

(a) The following under *either subdivision (1) or (2)* shall be considered as minimum evidence that the applicant is qualified for registration as a professional engineer:

(1) All of the following:

(A) Graduation in an approved engineering curriculum of four (4) years or more.

(B) A specific record of four (4) years or more of progressive experience on engineering projects of sufficient quality acquired subsequent to graduation, which experience indicates that the applicant is qualified to be placed in responsible charge of engineering work requiring the exercise of judgment in the application of engineering sciences to the sound solution of engineering problems.

(C) The successful passing of an examination as provided for in section 14 of this chapter.

(2) All of the following:

(A) A *specific record of eight (8) years or more of engineering education and experience in engineering work,* which indicates that the applicant has acquired knowledge and skill and practical experience in

engineering work approximating that required for registration as a professional engineer under subdivision (1).

(B) The successful passing of an examination as provided for in section 14 of this chapter.[3]

*Id.* (emphases added).

Eberenz acknowledges that because he has not obtained a degree "in an accredited engineering curriculum," his claim for comity registration rests solely on the *provisions* or *requirements for registration* of "subdivision (2)." *See* Br. of Appellee in Opposition to Transfer at 6–7. By the plain language of the statute, Eberenz must present evidence that he has acquired "[a] specific record of eight (8) years or more *of engineering education* and experience in engineering work." Ind. Code § 25–31–1–12(a)(2) (emphasis added.)

### B

Our legislature created the Board to "enforce and administer" Indiana Code § 25–31–1, specifically directing that it "shall adopt rules establishing standards for the competent practice of engineering." *Id.* § 25–31–1–7(a) (1993). The Board's rule-making authority is necessary for it " 'to make reasonable rules and regulations,' " for without this authority, " 'it would be impossible in many instances to apply and enforce the legislative enactments, and the good to be accomplished would be entirely lost.' " *Podgor v. Indiana Univ.,* 178 Ind.App. 245, 251, 381 N.E.2d 1274, 1279 (1978) (quoting *Financial Aid Corp. v. Wallace,* 216 Ind. 114, 121, 23 N.E.2d 472, 475 (1939)). And while "an administrative agency has only those [express] powers conferred on it by the General Assembly," *Fort Wayne Educ. Ass'n v. Aldrich,* 527 N.E.2d 201, 216 (Ind. Ct.App.1988), it is nonetheless "a well-settled principle of law that an administrative agency ... also has such implicit power as

---

**3.** This requirement of subsection (B) is not at issue in this case because the Board did not require Eberenz to submit to an additional examination as permitted by Ind.Code § 25–31–1–14(g). (R. at 16; Eberenz Pet. ¶ 39.) (R. at 144; Board Answer ¶ 25.)

is necessary to effectuate the regulatory scheme outlined by the statute," *Barco Beverage Corp. v. Indiana Alcoholic Beverage Comm'n,* 595 N.E.2d 250, 254 (Ind. 1992) (collecting cases).

In carrying out its legislative mandate to regulate "the competent practice of engineering," the Board adopted Administrative Rule 1.1–2–2, which provides as follows:

(a) *This section establishes the minimum education and experience requirements* under IC 25–31–1–12 *for admission to the professional engineer examination.*

(b) The following table establishes provisions for evaluating combined education and experience to determine if it is sufficient to satisfy minimum registration requirements under IC 25–31–1–12 for professional engineer registration applicants holding the stated degrees:

\* \* \*

(c) The *education* of all *applicants except those who have obtained a baccalaureate in an approved engineering curriculum* must include the following:

(1) At least twelve (12) semester credit hours in college level mathematics, excluding college algebra and trigonometry, which must include a minimum of nine (9) semester credit hours of calculus and a minimum of three (3) semester credit hours of advanced calculus based mathematics.

(2) At least eight (8) semester credit hours in college level courses in the physical sciences which must include a minimum of three (3) semester credit hours of calculus based physics and a

minimum of three (3) semester credit hours of laboratory-based chemistry.

(3) At least twelve (12) semester credit hours of engineering sciences which require calculus as a prerequisite or corequisite.

\* \* \*

Ind. Admin. Code tit. 864, r. 1.1–2–2 (1996) (emphases added).

As set forth under *Background, supra,* the Board denied Eberenz's comity application on the basis that he did not satisfy the education requirements outlined above in requirements (1)—(3) of subsection (c). *See also Eberenz,* 701 N.E.2d at 895–96. Eberenz emphatically argued to the Court of Appeals[4] that the Board has "wholly failed ... to address the *delimiting nature of subsection (a),*" *see* Br. of the Appellee at 16, thus misconstruing its own regulation to "ostensibly justify its refusal to grant Eberenz the registration to which he is entitled," *id.* at 17. Phrased differently, Eberenz claims that "the educational requirements established for '*applicants*' under subsection (c) of [the] regulation is [sic] for *applicants* to the professional engineer examination, and *not for applicants* for comity registration under the statutory provisions of IC 25–31–1–21 and IC 25–31–1–12." *Id.* at 17 (emphases added). And because Eberenz passed the nationally administered professional engineer examination, he contends the entire regulation is inapplicable to his application.

**B–1**

▮ As an initial matter, we agree with Eberenz that subsection (a) plausibly appears to delimit or control the remaining subsections,[5] however, "[w]hen the mean-

---

4. Eberenz presents the same argument to this Court. *See* Br. of Appellee in Opposition to Transfer at 8 ("[T]he Board has yet to set forth in any pleading or brief in this cause any plausible construction of the delimiting initial subsection of the subject regulation.").

5. Eberenz insists that a reviewing court "is bound to apply the plain and ordinary meaning ... of [subsection (a)] to restrict the ap-

plicability of the remainder of that regulation to those persons seeking admission to the engineering examination in Indiana." *See* Br. of Appellee at 17 (internal quotations and citation omitted). As we demonstrate *infra,* a court should not look to the "plain and ordinary meaning" of determinative words when the regulation or statute defines them. *Cf. State v. D.M.Z.,* 674 N.E.2d 585, 588 (Ind.Ct.

ing of an administrative regulation is in question, the interpretation of the administrative agency is given great weight unless the agency's interpretation would be inconsistent with the regulation itself." *State Bd. of Tax Comm'rs v. Two Market Square Assocs. Ltd.,* 679 N.E.2d 882, 886 (Ind.1997).

The Board's position to the contrary is that each regulation subsection operates independently so that subsection (a) does not necessarily control or delimit the scope of subsection (c). Eberenz's argument clearly stands or falls on the meaning of the term "applicant" as it is used in subsection (c). We look to the regulation's "Definitions" section to determine the meaning of the word "applicant." There, it is defined as "mean[ing] any individual whose application has been received by the [B]oard for consideration to be registered as an engineer ... in the state of Indiana." Ind. Admin. Code tit. 864, r. 1.1–1–1.

Applying this definition, we find nothing sinister, contrived or inconsistent about the Board's contention that the minimum education requirements outlined in subsection (c) apply to Eberenz "whose application has been received by the [B]oard for consideration to be registered as an engineer ... in the state of Indiana." *Id.; see Indiana Dep't of Public Welfare v. Payne,* 622 N.E.2d 461, 465 (Ind.1993) ("In interpreting an administrative regulation, the rules applicable to construction of a statute apply to construction of the regulation.") (collecting cases), *reh'g denied* ; *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind. 1999) ("Clear and unambiguous statutory meaning leaves no room for judicial construction."); *Consolidation Coal Co. v. Indiana Dep't of State Revenue,* 583

N.E.2d 1199, 1201 (Ind.1991) ("Where the General Assembly has defined a word, this Court is bound by that definition....").

### B–2

Even if we were not able to conclude by looking at the wording of the statute that subsection (c) sets minimum requirements that apply to all applicants, including those seeking comity registration, there is persuasive case law construing a nearly identical statute for licensing land surveyors [6] that convinces us of this result.

In *State Board of Registration for Land Surveyors v. Bender,* 626 N.E.2d 491 (Ind. Ct.App.1993), Bender's application to take the land surveyors examination was denied by the State Board of Registration for Land Surveyors ("Surveyor Board") because Bender lacked educational requirements that the Surveyor Board had established in the Indiana Administrative Code. When Bender sought administrative review of the Surveyor Board's decision, his application was again denied, initially by an ALJ and subsequently by the full Surveyor Board. Bender petitioned the trial court for review of the administrative action. The trial court vacated the Surveyor Board's decision, instructing the Board to permit Bender to take the examination. The Surveyor Board appealed.

Among the issues on appeal was whether the trial court erred in holding that the educational requirements established by the Surveyor Board were in excess of its statutory authority. The Surveyor Board's statutory authority was set forth in an Indiana Code section (which is nearly

---

App.1996) (Only "[u]ndefined words in a statute are given their plain, ordinary and usual meaning.") (citing Ind.Code § 1–1–4–1(c)), *transfer denied.*

**6.** The current statute (Ind.Code § 35–21–1) was implemented and the current regulation (Ind. Admin. Code tit. 864) was adopted to address the combined "State Board of Registration for Professional Engineers and Land

Surveyors." The statute remains entitled as such ("Professional Engineers and Land Surveyors") even though a separate statute now addresses land surveyors ("Article 21.5. Land Surveyors"). The name of the regulation was changed ("Title 864: State Board of Registration for Professional Engineers") effective July, 1, 1991. *See* P.L. 23–1991, sec. 42.

identical in wording to that currently before this Court) that stated in part:

> The following shall be considered as minimum evidence that the applicant is qualified for registration as a land surveyor:
>
> . . . .
>
> . . . A specific record of eight (8) years or more *of land surveying education* and experience in land surveying work, which indicates that the applicant has acquired knowledge and skill and practical experience in land surveying work approximating that required for registration as a professional land surveyor. . . .

*Bender,* 626 N.E.2d at 494 (emphasis added) (citing a section of the Indiana Code recodified at Ind.Code § 25–21.5–5–2).

Similar to the case currently before this Court, there existed additional education requirements in an Indiana Administrative Code rule adopted by a regulatory board. Among the rule's requirements was the successful completion of college level credit hours in the fundamentals of land surveying, mathematics, and the physical sciences.

Not unlike Eberenz, Bender had conceded that he did not have the requisite college curriculum required by the regulatory board's administrative rule, but that the board's statutory authority merely required that an applicant have a combination "of eight (8) years or more of *land surveying education* and experience." *Id.* at 495 (emphasis added). As Eberenz has argued in this appeal, Bender had likewise contended that the college courses required by the administrative rule were not required by statute and that the regulatory board, "by adopting a requirement to the contrary[,] . . . ha[d] attempted to impose additional and different minimum *ed-*

ucational requirements." *Id.* (emphasis added).

Finding that the *educational requirements* established by the Surveyor Board were within its statutory authority, the Court of Appeals reversed the trial court, observing the following:

> "Land Surveyor" is defined as a "person who, by reason of his *special knowledge of mathematics and surveying principles and methods* which are *acquired by education* and practical experience, is qualified to engage in the practice of land surveying as attested by his registration as a land surveyor."[7] The Legislature has authorized the State Board of Registration [for Land Surveyors] to "adopt rules establishing standards for the competent practice of . . . land surveying." Those standards necessarily include specific educational requirements. It is true, as Bender asserts, the enabling legislation requires noncollege graduates to have a combination of eight (8) years or more of land surveying education and experience. However, other than stating that the education must indicate that an applicant has acquired the knowledge, skill, and practical experience in land surveying work approximating that required of a degreed applicant, the statute is silent on the quality, quantity, or meaning of a *"land surveying education."* If the [Surveyor] Board had not adopted ascertainable educational standards, then any decision denying an applicant the opportunity to take the Land Surveyors Examination on educational grounds would violate due process. The requirement of ascertainable standards is designed to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary.

---

7. "Professional engineer" is similarly defined as an "individual who, by reason of that individual's *special knowledge of mathematical and physical sciences and the principles and methods* of engineering analysis and design which are *acquired by education* and practical experience, is qualified to engage in the practice of engineering as attested by that individual's registration as a professional engineer." Ind.Code § 25–31–1–2(b) (emphasis added to mirror the Court of Appeals's emphasis in *Bender* ).

By adopting a regulation outlining specific *educational requirements,* the [Surveyor] Board acted within the scope of its statutory authority.

*Id.* at 495–96 (final two emphases added).

We fail to see how the facts of this case differ from those addressed in *Bender.* There, it was determined that an administrative regulation imposing educational requirements for land surveyors not specifically set forth by the legislature was valid because it was "reasonable and consistent with and necessary to carry out the purposes of the [licensing] statute." *Bender,* 626 N.E.2d at 496.

We acknowledge that the *Bender* court was concerned with the validity of nonstatutory, regulatory educational requirements as applied to persons taking a licensing examination, while this appeal concerns similar educational requirements as applied to comity registration, but the reasoning is the same: the statutes in both instances are silent on the quality, quantity, or meaning of a *"land surveying education"* and *"engineering education"* respectively. In both instances, the regulatory boards adopted ascertainable educational standards so that any decision denying applicants the opportunity to ultimately become licensed in the respective professions would not violate due process. And in both instances, the boards acted within the scope of their respective statutory authority by adopting regulations outlining specific educational requirements.

After reviewing the statutory language before us and case law interpreting nearly identical language, we agree with the Board's position that Indiana's requirements for comity registration necessarily include those educational requirements found in Indiana Administrative Code, tit. 864, r. 1.1–2–2.

## II

We assume a more limited role in reviewing the Board's decision that Eberenz obtained his Kentucky engineer license under requirements which "conflict" with those established for registration in Indiana.

■■■ Proceedings before the Board and judicial review thereof are governed by the Administrative Orders and Procedures Act ("AOPA"). *See* Ind.Code §§ 4–21.5–1–1 *et seq.* (1993). Under the AOPA, the scope of a court's judicial review is limited to a consideration of (1) whether there is substantial evidence to support the agency's finding and order and (2) whether the action constitutes an abuse of discretion or is arbitrary or capricious. *Indiana Dep't of Envtl. Management v. Conard,* 614 N.E.2d 916, 919 (Ind.1993). In reviewing an administrative decision, this Court will not try the facts *de novo* nor substitute its own judgment for that of the agency. *Id.*

■■■ It follows from our analysis in Part I of this opinion that we now find there existed substantial evidence to support the Board's finding that Eberenz "lack[ed]" the requisite educational credits. The Board properly concluded that Indiana's requirements for comity registration included those educational requirements established in its own regulation, and we will not second-guess the Board's finding that Eberenz did not present evidence satisfying this standard. *See Indiana State Ethics Comm'n v. Nelson,* 656 N.E.2d 1172, 1174 (Ind.Ct.App.1995) ("The court on judicial review of an agency decision is governed by the presumption that the agency's decision is correct in view of its expertise."), *transfer denied.*

As for the determination that a "conflict" existed between Kentucky's and Indiana's licensure requirements, we recognize that the Board anticipated a need to define the term "conflict" in the context of "[c]omity registration standards." Thus, Rule 1.1–5–1 provides that

[u]nder IC 25–31–1–21, one (1) requirement for an individual who is registered as a professional engineer out-of-state to

become registered in Indiana is that the requirements under which the out-of-state registration was issued do not *conflict* with IC 25–31–1. *One (1) such provision* is that all other *requirements for registration be completed* before taking the principles and practice examination. Therefore, an applicant must have obtained the qualifying work experience following graduation and prior to the taking of the principles and practice examination. *Any other sequence of events shall be considered to be in conflict with IC 25–31–1.*

Ind. Admin. Code tit. 864, r. 1.1–5–1 (emphases added).

 At first blush, this language appears only marginally helpful in the context of this case: the single example (or "(1) such provision") provided therein concerns an applicant needing to take the nationally administered principles and practice examination.[8] We nonetheless acknowledge and accord great weight to the Board's consistent and obvious concern throughout its rules that all applicants complete the "requirements for registration."*See Indiana State Bd. of Registration for Prof'l Eng'rs & Land Surveyors v. Nord,* 600 N.E.2d 124, 128 (Ind.Ct.App. 1992) ("When an agency interprets its own statute, the reviewing court should accord the agency interpretation great weight, but is not bound thereby.") As such, we find that the Board's determination that a conflict existed with Eberenz's comity application was not an abuse of discretion, nor arbitrary or capricious.

Finally, we note that it is axiomatic that a state licensing board will occasionally deny a comity application on the basis of one or both of any state's most significant requirements for licensure: education and work experience. After all, these two requirements logically distinguish licensed professionals from the remainder of society, and Hoosiers and Kentuckians alike have a stake and an interest in seeing that regulatory boards are free to enforce and administer the competent practice of professionals in their respective states.[9]

*Conclusion*

We hold that the Board acted in accordance with Indiana law when it denied Eberenz's comity application on the basis that he did not present evidence establishing "[a] specific record of eight (8) years or more *of engineering education* and experience in engineering work," as defined by the Board. Furthermore, the Board did not abuse its discretion in determining that a conflict existed between Kentucky's and Indiana's licensure requirements.

We therefore grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court's judgment, and remand to the Board for further proceedings consistent with this opinion.

SHEPARD, C.J., and BOEHM and RUCKER, JJ., concur.

DICKSON, J., concurs as to Part I but dissents as to Part II.

---

**8.** We note that Rule 1.1–5–1 appears to be the Board's regulatory response to clarify another issue decided by the Court of Appeals in *Bender,* where the court was required to parse a series of events dealing with Bender's qualifying work experience. *See Bender,* 626 N.E.2d at 496–97.

**9.** This Court has recognized the wide discretion that a licensing board enjoys in determining whether a conflict exists concerning the meaning of the Indiana Code. *Cf. Sutto v. Board of Med. Registration & Examination,* 242 Ind. 556, 563, 180 N.E.2d 533, 537 (1962) ("Whether or not the qualifications and requirements provided by the law of the [s]tate where the applicant has previously been licensed are substantially equivalent to those required by the Chiropractic Act of Indiana is a question of fact to be determined by the Board.").